T.C. Memo. 2014-123

UNITED STATES TAX COURT

BLESSING U. ANYANWU, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24377-10, 24378-10.          Filed June 19, 2014.

Blessing U. Anyanwu, pro se.

<u>Blaine Charles Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  In these consolidated cases respondent issued two notices of

deficiency, one for 2006 and another for 2007.  Respondent determined the

[*2] following deficiencies, addition to tax, and penalties with respect to Blessing Anyanwu's Federal income tax for years 2006 and 2007:[1]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|------------|--------------------------------|----------------------|
| 2006 | $162,212 | --- | $32,442 |
| 2007 | 172,623 | $41,299 | 34,525 |

After respondent issued the notices of deficiency, he conceded $99,800 of the adjustment for 2007 because he erroneously disallowed a greater depreciation deduction than Ms. Anyanwu had actually claimed. The issues remaining for consideration are whether Ms. Anyanwu has unreported income; whether she is entitled to various deductions, some personal and others principally relating to her rental properties; and whether she is liable for an addition to tax and penalties. We hold that Ms. Anyanwu proved that a portion of her income came from nontaxable sources and that she is entitled to deductions beyond those respondent allowed. Further, respondent met his burden of production as to the addition to tax and penalties, and Ms. Anyanwu did not establish any grounds on which the addition to tax and penalties should not apply in these cases.

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3]                              FINDINGS OF FACT

Ms. Anyanwu resided in Minnesota at the time the petitions were filed.

Ms. Anyanwu and her husband, Ernest Anyanwu, divorced in 2005. Although they were divorced during the years in issue, their business and financial interests remained intertwined. For example, they continued to work together at a home healthcare business. Further, although the Anyanwus agree that Ms. Anyanwu was awarded their real estate holdings in the divorce, in her testimony Ms. Anyanwu refers to activities done by her and her then ex-husband[2] collectively during the years in issue with respect to the properties. Accordingly, we have distinguished the Anyanwus' tax attributes to the extent established by the record.

## I. Advantage Home Care

In 1994 the Anyanwus started Home Advantage Health Services (Home Advantage), a home healthcare business. The Anyanwus transferred Home Advantage to Mr. Simeon, a person they knew from their church, in 2006. Home Advantage was transferred in name only. Mr. Simeon did not pay the Anyanwus for their interest in either cash or property, and Ms. Anyanwu did not report the sale on her tax return. The business was renamed Advantage Home Care.

---

[2]After the years in issue, Mr. and Ms. Anyanwu remarried.

**[*4]** As it turned out, Mr. Simeon could not operate the business because he did not have a background in healthcare. Because Ms. Anyanwu is a registered nurse, she runs Advantage Home Care; she signs all of the checks for Advantage Home Care and verifies that the proper services were provided to the patients. Mr. Anyanwu also works for Advantage Home Care, and he is responsible for billing and for submitting claims for reimbursement through Medicare and Medicaid.

## II. Real Estate

The Anyanwus owned various real estate properties jointly during their marriage, and the properties were awarded to Ms. Anyanwu in the divorce. Ms. Anyanwu did not receive rent payments from all of the properties because some were unoccupied. The rent on the occupied properties ranged between $800 and $1,500 per month and averaged approximately $1,000 per month.

At least some of the properties were listed as Section 8 housing.[3] Because Mr. Anyanwu filled out the Section 8 housing applications in his name only, the rental assistance payments were made out to him. The Anyanwus attempted to list

---

[3]The Section 8 housing program under the United States Housing Act of 1937 authorizes a private landlord who rents to a low-income tenant to receive assistance payments from the U.S. Department of Housing and Urban Development (HUD) in an amount calculated to make up the difference between the tenant's rent payments and the contract rent agreed upon by the landlord and HUD. See Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 12 (1993); see also 42 U.S.C. sec. 1437f (2006).

**[\*5]** the properties in Ms. Anyanwu's name with the various housing authorities but were unsuccessful. As a result, the checks were still made payable to Mr. Anyanwu, and he endorsed them to Ms. Anyanwu.

During 2006 the Anyanwus sold two properties: the Alyssa Road property and the Florida Circle property. The sale of the Alyssa Road property resulted in proceeds of $140,837, and the sale of the Florida Circle property resulted in proceeds of approximately $52,946. Although Ms. Anyanwu lived in the Alyssa Road property at the time it was sold, the Anyanwus also bought and repaired distressed houses. Because they were repairing these homes, they purchased items such as equipment, materials, carpet, and appliances.

III. Underlying Liabilities

Ms. Anyanwu timely filed her 2006 Form 1040, U.S. Individual Income Tax Return. The return included Schedule A, Itemized Deductions, claiming deductions for State and local income taxes, real estate taxes, home mortgage interest, and gifts to charity. The return also included Schedule E, Supplemental Income and Loss, listing eight rental properties. The return shows a filing status of "Married Filing Separately" and reports Mr. Anyanwu as her spouse.

Ms. Anyanwu did not file her 2007 income tax return before the April 15, 2008, deadline, and there is no evidence that she properly filed a request for an

[*6] extension.  Again, Ms. Anyanwu included a Schedule A claiming itemized deductions for State and local income taxes, home mortgage interest, and gifts to charity.  In addition, she attached a Schedule E to the return listing nine rental properties.  As with the 2006 return, she selected "Married Filing Separately" filing status and reports Mr. Anyanwu as her spouse.

Ms. Anyanwu's 2006 and 2007 returns were selected for examination. During the examination respondent performed a bank deposits analysis on Ms. Anyanwu's accounts for the years in issue and determined that she had additional unreported income.

Respondent issued a notice of deficiency for the 2006 taxable year on August 5, 2010, making the following adjustments:  increased Ms. Anyanwu's income using results from respondent's bank deposits analysis; disallowed the claimed charitable contribution, home mortgage interest, real estate taxes, depreciation, and Schedule E mortgage interest deductions for lack of substantiation; and made other computational adjustments.  In addition, respondent determined a section 6662(a) accuracy-related penalty.

Respondent also issued a notice of deficiency for the 2007 taxable year on August 5, 2010, making adjustments similar to those for 2006, including the following:  increased Ms. Anyanwu's income using results from respondent's

**[*7]** bank deposits analysis; disallowed the claimed charitable contribution, home mortgage interest, depreciation, and Schedule E mortgage interest deductions for lack of substantiation; and made other computational adjustments. Respondent also determined a section 6662(a) accuracy-related penalty and a section 6651(a)(1) failure to timely file addition to tax.

Ms. Anyanwu timely petitioned the Court with regard to both notices, and the Court consolidated the cases.

IV. Proceedings Before the Tax Court

In late 2011 respondent filed a motion to show cause why proposed facts and evidence should not be accepted as established. The motion explained that Ms. Anyanwu had not provided any documents to substantiate her income or deductions after being given multiple opportunities to do so. The motion also included a proposed stipulation of facts. The stipulation listed some basic facts such as where Ms. Anyanwu lived and when her returns were filed. The stipulation further stated that Ms. Anyanwu had not provided any explanation of nontaxable sources of income to account for her excess deposits and could not substantiate items underlying any of the deductions disallowed in the notice of deficiency. The Court granted respondent's motion and ordered Ms. Anyanwu to respond to respondent's motion. After receiving no response from Ms. Anyanwu,

**[*8]** the Court deemed all of the facts and evidence set forth in respondent's proposed stipulation of facts to be established.

In February 2012 the Court held a pretrial conference with the parties in St. Paul, Minnesota. The Court continued the cases to allow Ms. Anyanwu time to gather the relevant documents.

These cases were calendared for trial during the Court's April 22, 2013, St. Paul, Minnesota, trial session. At the time for trial the parties appeared and provided joint exhibits consisting of documents that Ms. Anyanwu argued showed her nontaxable sources of income and substantiated items underlying her deductions. Notwithstanding the previous stipulation, respondent agreed that an additional four exhibits could be admitted.[4] Respondent also did not object to additional documents that Ms. Anyanwu introduced, but the written notations on the documents were admitted only as a statement of her position.

---

[4]See Rule 91(e) ("The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires.").

**[\*9]**                                            OPINION

## I. Burden of Proof

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving otherwise.[5] Although the burden may shift to the Commissioner under section 7491(a), Ms. Anyanwu does not claim that the burden has shifted to respondent, and likewise we do not find it appropriate to shift the burden to respondent.

Income tax deductions are a matter of legislative grace, and the burden of proving entitlement to any claimed deduction rests on the taxpayer.[6] Further, the taxpayer is required to maintain sufficient records to "show whether or not such person is liable for tax".[7]

## II. Omitted Income

Where a taxpayer fails to keep sufficient records under section 6001, the Commissioner may compute taxable income through a method that "does clearly

---

[5]Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

[6]<u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>see also</u> Rule 142(a).

[7]Sec. 6001.

[*10] reflect income".[8]  The Commissioner's use of the bank deposits analysis method has long been approved in such an instance.[9]  This method "assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, but the Government must take into account any nontaxable source or deductible expense of which it has knowledge."[10]  Nontaxable sources include funds attributable to "'loans, gifts, inheritances, or assets on hand at the beginning of the taxable period.'"[11]

A bank deposits analysis may provide prima facie evidence of income, and the Commissioner is not required to prove the likely source of the income.[12]  The taxpayer shoulders the burden of establishing that items "should be excluded from income or allowed as deductions."[13]  One such way of proving that an item should

---

[8]Sec. 446(b).

[9]Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978).

[10]Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994) (citing DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992)).

[11]Burgo v. Commissioner, 69 T.C. 729, 743 n.14 (1978) (quoting Troncelliti v. Commissioner, T.C. Memo. 1971-72).

[12]Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

[13]Gemma v. Commissioner, 46 T.C. 821, 833 (1966).

[*11] have been excluded would be to show that the deposit is derived from a nontaxable source.[14]

Ms. Anyanwu provided copies of canceled checks to prove that she did not have the unreported income that respondent claims. She claims that most of the unreported income came from nontaxable sources.

A. Loans

Ms. Anyanwu testified that she lent money to various people, including family members and members of her church. Although Ms. Anyanwu provided copies of canceled checks she received and stated that they were repayments of loans, she did not provide any evidence of any loans. Ms. Anyanwu has not proven that any of the payments from family members or friends are nontaxable.

Ms. Anyanwu also made loans to Advantage Home Care during 2006 and 2007. She provided copies of wire transfers and canceled checks made payable to Advantage Home Care and copies of checks made payable to her from Advantage Home Care. We find that Ms. Anyanwu has proven that the repayments are nontaxable. The record reflects $122,000 in either canceled checks or wire transfer receipts that Ms. Anyanwu paid to Advantage Home Care during the years in issue. Consistent with that, the record shows $123,026 in payments from

---

[14]See Nicholas v. Commissioner, 70 T.C. at 1064.

[*12] Advantage Home Care to Ms. Anyanwu during the years in issue. Some of the checks say "Reimbursement" in the memo line, and one says "Rent".[15] However, on the basis of Ms. Anyanwu's testimony regarding the loans and the similarity in the payments between Ms. Anyanwu and Advantage Home Care, we find that $122,000 of the payments is for loan repayments and is nontaxable.

Additionally, Ms. Anyanwu stated in her brief that she received a loan from Wells Fargo Bank for approximately $35,000. Ms. Anyanwu did not provide any loan documents or a copy of a canceled check to substantiate the loan amount or when it was made. Thus, she did not prove that the alleged loan from Wells Fargo Bank is nontaxable.

### B. Tax Refunds

Generally, State tax refunds are taxable to a recipient who deducted the tax for a prior year unless the deduction did not provide a Federal tax benefit.[16] Ms. Anyanwu submitted copies of refund checks from the U.S. Treasury and the State of Minnesota. The check from the U.S. Treasury was made payable to Mr. Anyanwu but was endorsed to Ms. Anyanwu. The check from the State of

---

[15]It is unclear why "Rent" would be written in the memo line because neither party argued that Advantage Home Care rented property from Ms. Anyanwu.

[16]Sec. 111(a); sec. 1.111-1(a), Income Tax Regs.

**[*13]** Minnesota was made payable only to Ms. Anyanwu. Both checks represented refunds for the 2005 taxable year.

Ms. Anyanwu did not provide any evidence to show that the State refund should be nontaxable. However, the Federal refund is not taxable because Federal taxes are not allowed as a deduction. Accordingly, the State tax refund is includible in her income, and the Federal tax refund is not.

C. Real Estate Proceeds

Before we proceed to the specifics of the taxable nature of the proceeds, we need to address the assignment of income doctrine. Many of the checks relating to the properties are written to Mr. Anyanwu and then endorsed to Ms. Anyanwu. The assignment of income doctrine prevents an individual from avoiding taxation on income by assigning that income to another.[17] Thus, income is taxable to the owner of the property, in other words, the one who owns the tree on which the fruit grows.[18] Mr. and Ms. Anyanwu owned their properties jointly until Ms. Anyanwu was awarded all of the properties in the divorce. Many of the checks relating to the rental properties were written to Mr. Anyanwu because his name

---

[17]Lucas v. Earl, 281 U.S. 111 (1930).

[18]Helvering v. Horst, 311 U.S. 112, 116-117 (1940); Lucas v. Earl, 281 U.S. at 114-115.

**[*14]** was still associated with the properties. The Anyanwus do not dispute that Ms. Anyanwu owned the properties, and as a result she is the one responsible for the tax.

Section 1001(c) generally requires taxpayers to recognize the entire amount of gain or loss on the sale or exchange of property. Gain from the sale or other disposition of property is the excess of the amount realized over the adjusted basis of the property.[19] Gross income does "not include gain from the sale or exchange of property if, during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more."[20]

Ms. Anyanwu submitted two canceled checks representing the proceeds from the sales of the Alyssa Road and Florida Circle properties. The check for the Alyssa Road property was made out to Mr. Anyanwu and endorsed to Ms. Anyanwu. The check for the Florida Circle property was made out to Ms. Anyanwu.

Ms. Anyanwu provided a settlement statement for the Alyssa Road property. It reported only Mr. Anyanwu's name as the sole owner of the property. The

_____

[19]Sec. 1001(a).

[20]Sec. 121(a).

**[*15]** statement said Mr. Anyanwu was unmarried, and only his signature appears on the warranty deed conveying the property to the new owners. Nonetheless, because the property had been awarded to Ms. Anyanwu in the divorce, the proceeds are properly attributed to her. Ms. Anyanwu did not provide a similar document for the Florida Circle property.

At trial Ms. Anyanwu stated that she did not believe any amounts received from the sales needed to be included in her income because she and Mr. Anyanwu had previously paid taxes on the real estate. At trial Ms. Anyanwu testified that she lived in the Alyssa Road property at the time it was sold. However, she did not testify or provide other evidence to show that she met the requirements under section 121 to exclude the gain from the sale of that property from her income. As for the Florida Circle property, Ms. Anyanwu testified that it was a property that she bought, repaired, and sold with Mr. Anyanwu. There is no evidence to suggest that she lived in Florida Circle property. Accordingly, on the record before us, the gain from the sale of the Alyssa Road property and the Florida Circle property should be included in income.

D. Transfers Between Accounts and Checks Payable to Herself

Ms. Anyanwu provided wire transfer receipts totaling $54,000. Ms. Anyanwu also provided copies of canceled checks made payable to herself

[*16] totaling $15,000. These transactions are nontaxable, and any such transactions during the years in issue should not be included in income.

E. Escrow Overpayments

Ms. Anyanwu submitted copies of canceled checks from various insurance, escrow, and mortgage companies. Ms. Anyanwu argued in her brief that the checks represent overpayments of escrow accounts. One of the checks was made payable to Mr. Anyanwu but endorsed to Ms. Anyanwu, one of the checks was made payable to Mr. Anyanwu and endorsed by Mr. Anyanwu, and the others were made payable to Ms. Anyanwu. All of the checks are dated during 2006.

We have previously held that amounts held in escrow accounts and returned as refunds are nontaxable.[21] Accordingly, the three checks totaling $2,894 that were either written to or endorsed by Ms. Anyanwu are nontaxable. The check addressed to Mr. Anyanwu should not have been included in her income regardless because it belonged to Mr. Anyanwu and was not endorsed to her.

F. Deposits From Tenants

If an amount is received under a "present claim of full ownership, subject to the lessor's unfettered control," and is to be applied to the rent at a subsequent time during the term, it is treated as taxable income to the lessor upon

---

[21]See Coleman v. Commissioner, T.C. Memo. 1979-139.

[*17] receipt.[22] If, however, the sum was deposited by the lessor to secure the lessee's performance under the lease and is to be returned at the expiration of the lease, it is not income to the lessor even though the lessor may have temporary use of the money.[23] To resolve the question of which rule applies, we must look to the terms of the lease and the facts of the particular case.[24]

Ms. Anyanwu provided three checks totaling $3,213 from the State of Minnesota that she states in her brief are security deposits that are returned to the tenants when they move out of her rental properties. These checks were written in 2006 and are made out to and endorsed by Mr. and Ms. Anyanwu. Ms. Anyanwu did not provide any lease documents that illustrate the character of the deposits. In her brief she stated that the amounts were returned to the tenants when they moved out, but in one place she labeled them "security deposits" and in another place she called them "background checks". Regardless of the characterization, Ms.

---

[22]Mantell v. Commissioner, 17 T.C. 1143, 1147-1148 (1952); see also Astor Holding Co. v. Commissioner, 135 F.2d 47, 48 (5th Cir. 1943), aff'g a Memorandum Opinion of the Board of Tax Appeals.

[23]Warren Serv. Corp. v. Commissioner, 110 F.2d 723, 724 (2d Cir. 1940), aff'g on this point, rev'g on another 39 B.T.A. 856 (1939); Mantell v. Commissioner, 17 T.C. at 1148.

[24]Hirsch Improvement Co. v. Commissioner, 143 F.2d 912, 915 (1944), aff'g a Memorandum Opinion of this Court; Astor Holding Co. v. Commissioner, 135 F.2d at 48.

[*18] Anyanwu did not sufficiently explain the deposits, and therefore we hold that they are taxable.

### G. Payment From Estate

Ms. Anyanwu submitted a copy of a canceled check for $10,000 that states in the memo line that is payment from a person's estate. Because inheritances are nontaxable, the $10,000 should not be included in Ms. Anyanwu's taxable income. Further, the check was made payable to Mr. Anyanwu, and there is no evidence to show that it was endorsed to Ms. Anyanwu. Thus, for multiple reasons, it should not be included in her taxable income.

### H. Checks to Others

Ms. Anyanwu provided copies of deposit slips and checks that she argues were not made payable to her, not endorsed by her, or not for the years in issue. We address each in turn.

First, Ms. Anyanwu provided a deposit slip and copies of checks made payable to Home Advantage, the predecessor to Advantage Home Care. These checks total $55,687. The checks were made payable to Home Advantage and were deposited in an account belonging to Home Advantage. Accordingly, they should not be included in Ms. Anyanwu's income.

**[\*19]** Second, Ms. Anyanwu provided payroll checks from Advantage Home Care and other checks made payable to Mr. Anyanwu totaling $67,989. Mr. Anyanwu testified that although the checks were deposited in the Anyanwus' joint account, those amounts were included in his income for 2006 and 2007. The checks were made payable to and endorsed by Mr. Anyanwu and should not be included in Ms. Anyanwu's income.

Third, Ms. Anyanwu provided checks made payable to unrelated third parties. At trial respondent called John Knoll, a personal banker at U.S. Bank, one of Ms. Anyanwu's banks, to explain why checks would have been provided to Ms. Anyanwu that were written to unrelated persons. Mr. Knoll explained that when a check is deposited it goes to a department that copies the check and electronically files it. If during this process a check is misplaced or gets out of order, it will be imaged incorrectly. However, although the image is incorrect, the check would not be deposited into Ms. Anyanwu's account. In short, although the images of these checks erroneously appear in Ms. Anyanwus's bank records, these checks were not deposited into her account. Because they were not deposited into her account, they were not included in respondent's bank deposits analysis in the first instance.

**[*20]** Lastly, we address checks for years other than the years in issue. The checks totaled $19,785 and were all written in 2005. Checks dated for years other than the years in issue also should not be included in Ms. Anyanwu's income for the years before us.[25]

III. Deductions

    A. Schedule A Deductions

Income tax deductions are a matter of legislative grace, and the burden of proving entitlement to any claimed deduction rests on the taxpayer.[26] The taxpayer is required to maintain sufficient records to "show whether or not such person is liable for tax".[27]

        1. Real Property Taxes

Section 164(a)(1) allows taxpayers to deduct "State and local, and foreign, real property taxes." On her 2006 return Ms. Anyanwu deducted nearly $5,000 for real estate taxes. Ms. Anyanwu did not provide any documents at trial and simply mentioned paying real property taxes on various properties. In her brief she stated that the information was submitted to the Internal Revenue Service when the tax

---

[25]See Estate of Spiegel v. Commissioner, 12 T.C. 524, 527 (1949).

[26]INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; see also Rule 142(a).

[27]Sec. 6001.

[*21] returns were filed. Ms. Anyanwu has not presented sufficient evidence to prove that the deduction should be allowed. Accordingly, respondent's disallowance of the real property tax deduction is sustained.

## 2. Charitable Contributions

Section 170(a)(1) allows a deduction for any charitable contribution, as defined in section 170(c), as long as the contribution can be verified under regulations prescribed by the Secretary. In order to substantiate monetary charitable contributions, the taxpayer must maintain one of the following: (1) a canceled check; (2) a receipt from the donee charitable organization showing the name of the donor, the date of the contribution, and the amount of the contribution; or (3) other reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution.[28] However, a deduction for a contribution over $250 must be substantiated by a contemporaneous written acknowledgment of the contribution by the donee organization.[29] The acknowledgment must contain: (1) the amount of cash or a description of any property contributed, (2) whether the donee organization

---

[28]Van Dusen v. Commissioner, 136 T.C. 515, 533 (2011); sec. 1.170A-13(a)(1), Income Tax Regs.

[29]Sec. 170(f)(8)(A).

**[\*22]** provided any goods or services in consideration for any property contributed, and (3) a description and good-faith estimate of the value of any provided goods or services or if such goods or services consist of intangible religious benefits, a statement to that effect.[30] In order for the acknowledgment to be contemporaneous, it must be obtained on or before the earlier of the date on which the taxpayer files a return for the taxable year in which the contribution was made or the due date (including extensions) for filing such return.[31]

Ms. Anyanwu claimed substantial charitable contribution deductions for the years in issue, and the entirety of these deductions was disallowed by respondent. At trial Ms. Anyanwu provided copies of canceled checks payable to her church. For 2006 the checks totaled $21,500, and for 2007 the checks totaled $26,600. Ms. Anyanwu also submitted an "Individual Tithes and Offerings Summary" for the years in issue showing contributions of $24,730 for 2006 and $26,600 for 2007. However, the summaries were addressed to Mr. and Ms. Anyanwu, and Ms. Anyanwu previously admitted to altering the summaries to show only her name. The summaries stated that the church did not provide any goods or services in consideration for the contributions. The summaries do not list the date that they

---

[30]Sec. 170(f)(8)(B).

[31]Sec. 170(f)(8)(c).

**[*23]** were prepared but both state: "You may retain this receipt for income tax purposes." Accordingly, we find that the summaries were contemporaneous.

Although Ms. Anyanwu admitted to having altered the summaries to remove Mr. Anyanwu's name, the checks provided match the summaries and bear only Ms. Anyanwu's name. For 2006 there are five amounts listed on the summary that do not have a corresponding check; and because Ms. Anyanwu did not prove that she made those contributions, we will not allow them. Further, the contribution made on December 31, 2006, is listed on the summary as $1,000 even though Ms. Anyanwu submitted a canceled check payable to the church on 12/31/06 for $2,800. Because of the requirements of section 170, we can allow only $1,000 as a deduction. All of the contributions on the 2007 summary match the checks that Ms. Anyanwu provided.

On the basis of the foregoing, we will allow charitable contribution deductions of $19,700 for 2006 and $26,600 for 2007, subject to the limitations under section 170(b)(1)(A).

**[*24]** 3. Home Mortgage Interest

Generally, a taxpayer may claim a deduction for "all interest paid or accrued within the taxable year on indebtedness."[32] Indebtedness has been held to mean an unconditional and legally enforceable obligation for payment of money.[33] However, taxpayers generally are not allowed a deduction for personal interest paid or accrued during the taxable year.[34] There is an exception to this rule under section 163(h)(2)(D) which allows a deduction for qualified residence interest. A qualified residence is the taxpayer's personal residence and one other residence of the taxpayer which is selected by the taxpayer and used by the taxpayer as a residence.[35]

For 2006 Ms. Anyanwu provided copies of checks sent to various mortgage companies. The checks bear only account numbers in the memo lines, and Ms. Anyanwu did not explain or produce any information about which account corresponds to each property. Further, Ms. Anyanwu did not explain what portion of each check corresponds to principal and what portion to interest. As a result,

---

[32]Sec. 163(a).

[33]Linder v. Commissioner, 68 T.C. 792, 796 (1977).

[34]Sec. 163(h).

[35]Sec. 163(h)(4)(A).

[*25] she failed to establish the amounts of any deductible interest payments with respect to any qualified residence.

For 2007 Ms. Anyanwu provided multiple Forms 1098, Mortgage Interest Statement. Some of the Forms 1098 were addressed to Ms. Anyanwu, some were addressed to Mr. Anyanwu, and some were addressed to Mr. and Ms. Anyanwu. All of the Forms 1098 addressed to Ms. Anyanwu, except one, were labeled with the same Alyssa Road address that appears on the returns for 2006 and 2007.[36] However, as previously discussed above, Ms. Anyanwu stated at trial and provided the settlement document to show that the Alyssa Road property was sold in 2006. The Form 1098 that does not list the Alyssa Road address corresponds to one of the rental properties listed on the 2007 Schedule E.

Ms. Anyanwu provided no evidence linking any of the Forms 1098 to a qualified residence, and it is impossible to determine from their face which, if any, of the Forms 1098 relates to a qualified residence. Accordingly, respondent's determination to disallow the home mortgage interest deductions for both years is sustained.

---

[36]One Form 1098 lists a different number for Ms. Anyanwu's address on Alyssa Road, but this appears to be a typographical error.

**[\*26]** B. <u>Schedule E Deductions</u>

Taxpayers are allowed a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".[37] Taxpayers are not allowed a deduction for personal, living, or family expenses except where specifically allowed by the Code.[38] Again, deductions are a matter of legislative grace,[39] and taxpayers must maintain sufficient records to establish the amounts of claimed deductions.[40] These records must be retained for as long as the contents may become material and must be kept available for inspection.[41]

In some instances, the Court may approximate the amount if the taxpayer can establish a deductible expense but cannot substantiate the precise amount.[42] However, the taxpayer must provide some basis for the estimate.[43]

---

[37]Sec. 162(a).

[38]Sec. 262(a).

[39]<u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. at 84.

[40]Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

[41]Sec. 1.6001-1(e), Income Tax Regs.

[42]<u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930).

[43]<u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).

[*27]        1.  <u>Depreciation Expense or Depletion</u>

Under section 167(a), taxpayers are allowed as a deduction a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business or property held for the production of income.  The deduction for any tangible property is generally determined by using the applicable depreciation method, an applicable recovery period, and the applicable convention.[44]  The period of depreciating an asset begins when the asset is first placed in service.[45] Depreciation is generally proven by using the cost of the property as its basis.[46]  If a taxpayer pays a lump sum for depreciable property and nondepreciable property, as in the case of real property with improvements, the cost must be apportioned between the land and the improvements.[47]

To substantiate the deduction for 2006, Ms. Anyanwu provided contracts and invoices for work that contractors completed on the rental properties. However, all of the invoices were addressed to Mr. Anyanwu.  Ms. Anyanwu

---

[44]Sec. 168(a).

[45]Sec. 1.167(a)-10(b), Income Tax Regs.

[46]Secs. 167(c), 1011, 1012; sec. 1.167(g)-1, Income Tax Regs.

[47]<u>Broz v. Commissioner</u>, 137 T.C. 46, 58 (2011), <u>aff'd</u>, 727 F.3d 621 (6th Cir. 2013); sec. 1.167(a)-5, Income Tax Regs.

[*28] submitted canceled checks to show that she paid $10,300 towards one contract but otherwise did not provide any evidence to show that she paid for the expenses. Further, Ms. Anyanwu provided payment receipts to show that insurance premiums were paid on the properties but it is not clear to which properties the receipts related, and the receipts were addressed to both Mr. and Ms. Anyanwu. Ms. Anyanwu also provided a canceled check dated in 2006 to what appears to be a homeowners association. However, the memo line states only "926 and 892".[48] Lastly, Ms. Anyanwu submitted a canceled check to "Custom Granite" for $1,500, but there is no explanation of why that expense was incurred. Ms. Anyanwu did attach a Federal Depreciation Schedule to her 2006 return, but she did not provide any testimony or other evidence at trial to explain the numbers appearing on the schedule.

Respondent conceded $99,800 of the adjustment for 2007, which equals the difference between respondent's disallowance and the amount Ms. Anyanwu actually claimed on her return. In order to prove the remaining amount of the 2007 disallowance, Ms. Anyanwu provided only invoices of work performed to substantiate the depreciation expense or depletion deduction. All of the invoices

---

[48]Ms. Anyanwu listed properties with address numbers of 892 and 926 on her 2007 Schedule E but not her 2006 Schedule E.

[*29] were addressed to Mr. Anyanwu, and there were no corresponding documents to show that Ms. Anyanwu incurred the expenses.

Further, Ms. Anyanwu provided nothing to show her basis in any of the properties. On the basis of this lack of evidence, respondent's determinations, reduced by his previous concession of $99,800 for 2007, are sustained for the years in issue.

2. Mortgage Interest

Section 212 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year for the management, conservation, or maintenance of property held for the production of income.

As stated previously, Ms. Anyanwu provided copies of canceled checks to prove the mortgage interest, and these checks, which do not differentiate between principal and interest, are not enough to substantiate the deduction for 2006. Again, Ms. Anyanwu provided multiple Forms 1098 for 2007 and all but one addressed to her listed the same address. Some of the Forms 1098 were also addressed to Mr. Anyanwu, and some were addressed to Mr. and Ms. Anyanwu. Because we cannot determine which Forms 1098 correspond to which properties, we will allow Ms. Anyanwu to deduct the total amount listed on those Forms 1098 that were addressed solely to her on Schedule E. However, this is only the case

[*30] regarding the Forms 1098 addressed solely to Ms. Anyanwu, because we are unable to determine what portion Ms. Anyanwu paid of the interest listed on the Forms 1098 not addressed solely to her.  Any additional amount beyond the total reported on the Forms 1098 addressed to Ms. Anyanwu is disallowed.

All other Schedule E adjustments for 2006 and 2007 are computational.

## IV.  Filing Status

Finally, we address Ms. Anyanwu's filing status.  For 2006 and 2007 she filed her returns as "Married Filing Separately".  She stated at trial that this was an error made by the return preparer and she should have filed as "Single".  We agree that "Single" is the appropriate filing status, and it should be adjusted as part of the Rule 155 computations.

## V.  Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failing to timely file a Federal income tax return, unless it is shown that the failure is due to reasonable cause and not due to willful neglect.  Respondent bears the burden of production

[*31] with respect to any penalty or addition to tax.[49]  Ms. Anyanwu then bears the burden of proving any defenses.[50]

Respondent imposed an addition to tax under section 6651(a)(1) for the 2007 taxable year.  At trial Ms. Anyanwu testified that she filed her return after the April 15, 2008, deadline.  However, Ms. Anyanwu also testified that she believed that her return preparer filed an extension request before the deadline.  Although she provided the Form 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return, she did not establish that she timely filed the extension request.  Moreover, respondent's records show that the extension request was included with the untimely return.

Accordingly, we find that respondent has met his burden of production, and because Ms. Anyanwu was not able to prove any defenses, the addition to tax under section 6651(a)(1) is sustained.

VI.  Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on "any portion of an underpayment of tax required to be shown on a return" if the underpayment is due to, among other reasons, negligence, disregard of rules or

---

[49]Sec. 7491(c).

[50]See Higbee v. Commissioner, 116 T.C. 438, 447 (2001)

[*32] regulations, or any substantial understatement of income tax. As with section 6651(a), respondent bears the burden of production as to the penalty.[51] The penalty will not apply to any portion of the underpayment for which a taxpayer establishes that he or she had reasonable cause and acted in good faith.[52]

As defined in the Code, "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard."[53] Negligence has been further defined as a "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"[54] Additionally, a taxpayer is negligent if he fails to maintain sufficient records to substantiate the items in question.[55]

---

[51]Sec. 7491(c).

[52]Sec. 6664(c)(1).

[53]Sec. 6662(c).

[54]Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g in part, remanding in part 43 T.C. 168 (1964), and T.C. Memo. 1964-299).

[55]See Higbee v. Commissioner, 116 T.C. at 449; sec. 1.6662-3(b)(1), Income Tax Regs.

[*33] An understatement of income tax is "substantial" if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000.[56]

In accordance with this opinion, Ms. Anyanwu's exact underpayment for each year depends on the Rule 155 computations. If these computations establish a substantial understatement of income tax for any year, respondent has met his burden of production with respect to that year.[57] Respondent has also proven that Ms. Anyanwu acted with negligence. She kept some records but did not keep others needed to substantiate her claims. She also did not exercise due care in filing her returns. Although Ms. Anyanwu had return preparers prepare her returns for both years, the returns had readily apparent errors that Ms. Anyanwu should have discovered before the returns were filed.

Reliance on the advice of a tax professional may establish that the taxpayer acted with reasonable cause and good faith.[58] However, a taxpayer's reliance on a return preparer is not reasonable where "even a cursory review" would unveil

---

[56]Sec. 6662(d)(1)(A).

[57]See Olagunju v. Commissioner, T.C. Memo. 2012-119; Jarman v. Commissioner, T.C. Memo. 2010-285.

[58]Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 229 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b), Income Tax Regs.

[*34] errors.[59] Ms. Anyanwu did not testify or provide any other evidence regarding the qualifications of the return preparers she used during the years in issue. Further, both returns were filed using "Married Filing Separately" filing status. Both returns also identify Mr. Anyanwu as her spouse and provide his Social Security number. This information is at the very top of the returns, and we find it unlikely that it would have gone unnoticed if Ms. Anyanwu had given her returns even a cursory review before they were filed. As a result, Ms. Anyanwu did not act reasonably.

Accordingly, the penalties under section 6662(a) for 2006 and 2007 are sustained.

VII. Conclusion

On the basis of our examination of the record before us and the parties' arguments at trial, we find that Ms. Anyanwu failed to show that most of respondent's adjustments are incorrect. However, Ms. Anyanwu did prove that a portion of the money in her accounts came from nontaxable sources, such as loans, a Federal tax refund, transfers between accounts, checks written to herself, escrow overpayments, and a payment from an estate. Ms. Anyanwu also proved that she is entitled to a charitable contribution deduction for each of the years in issue and

---

[59]Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).

**[*35]** a Schedule E mortgage interest deduction for 2007. Further, respondent met his burden of production with respect to the addition to tax and penalties, and Ms. Anyanwu failed to meet her burden of proving that they should not apply.

To reflect the foregoing and the concessions of the parties,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.