T.C. Memo. 2014-257

UNITED STATES TAX COURT

OLIVER BARR MCCLELLAN AND CECILE WILLIAMS MCCLELLAN,
Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25565-12.                     Filed December 22, 2014.

Oliver Barr McClellan and Cecile Williams McClellan, pro sese.

Janet F. Appel, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge:  Respondent determined deficiencies in petitioners'

Federal income tax and accuracy-related penalties as follows:[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

[*2]

|  | Year | Deficiency | Penalty<br>sec. 6662(a) |
|---|---|---|---|
|  | 2006 | $40,732 | $8,146.40 |
|  | 2007 | 37,240 | 7,448.00 |
|  | 2008 | 25,874 | 5,174.80 |

After concessions, the issues for decision are: (1) whether petitioners are entitled to various deductions claimed on Schedules C, Profit or Loss From Business, for 2006, 2007, and 2008 (years at issue) in excess of those respondent allowed; (2) whether petitioners are entitled to various deductions claimed as losses for 2006; and (3) whether petitioners are liable for the section 6662 accuracy-related penalty for each of the years at issue.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing their petition, petitioners resided in Mississippi.

---

[2]Petitioners concede that they received $96 of taxable interest in 2006; that they received $5,000 of gross receipts in 2006 and 2008; and that they did not report these amounts on their 2006 and 2008 returns. Respondent concedes that for 2007, petitioners are allowed the following Schedule C deductions: (1) $201.48 for delivery costs; (2) $100.69 for office expenses; and (3) $570.11 for books and references. Respondent also concedes that for 2008 petitioners are allowed to claim a $52.51 deduction for books and references.

**[*3]** I. Background

Petitioner husband Oliver McClellan received a bachelor of arts degree in 1961 and a bachelor of laws degree in 1964, both from the University of Texas in Austin. After graduating from law school petitioner husband practiced as an attorney with a law firm in Austin, Texas, assisting clients in general legal matters. He stopped practicing law in order to start and operate a call center business in Houston, Texas, with his wife, who had prior experience in the call center industry.

In 1998 petitioners sold their Houston call center business and created BCMC, a consulting business for call centers. From 1998 until approximately 2004, petitioners individually or collectively engaged in multiple business activities, including a real estate business, a general consulting business, and writing books.

II. BCMC's Agreement With Messages, Inc.

In 2004 BCMC entered into a temporary working arrangement with Messages, Inc., which was the flagship company of a consortium of call centers based in Princeton, New Jersey, Boston, Massachusetts, Willow Grove,

[*4] Pennsylvania, and Los Angeles, California.[3] Pursuant to the terms of their arrangement BCMC received $10,000 per month plus reimbursement of certain expenses[4] from Messages, Inc., in exchange for BCMC's providing business management and advisory services to Messages, Inc., and the other above-mentioned call centers. After an initial six-month period, BCMC agreed to continue their arrangement with Messages, Inc., and the other call centers month to month. During the years at issue, petitioners traveled and worked together conducting the activities of BCMC primarily in Manhattan and Staten Island, New York; Westborough and Boston, Massachusetts; Orange, Princeton, Ocean, Covington, and Kendall Park, New Jersey; and Philadelphia, Willow Grove, and King of Prussia, Pennsylvania. Petitioners spent approximately 80% of each year

---

[3]Messages, Inc., was purportedly the largest call center in Manhattan, New York. Each of the other call centers was independently owned by various companies, including the Robertshaw companies, the Answernet companies, and the Signius companies, and individuals. Petitioners performed consulting services for these other companies through BCMC's arrangement with Messages, Inc.

[4]More specifically, Messages, Inc., agreed to reimburse petitioners for subway, bus, taxi, and limousine expenses that petitioners incurred while traveling to the sites of the various consortium members and to the sites of prospects of the consortium members; for expenses petitioners incurred for parking their vehicle when on business (but not for garage purposes); and for gasoline expenses petitioners incurred while traveling on company business. Petitioners paid all maintenance and repair expenses for their vehicle.

**[*5]** at issue at these various locations conducting consulting services on behalf of BCMC.

BCMC's arrangement with Messages, Inc., was not exclusive, and on at least one occasion during the years at issue BCMC provided consulting services for another entity or person not associated with Messages, Inc.

III.  The Gulfport Home and the New York City Apartment

In 1994 petitioners purchased a single-family home in Gulfport, Mississippi, to provide housing for petitioner wife's mother and father.  In 2001 petitioners moved into this home after petitioner wife's parents passed away, using the home for personal and business purposes including operating BCMC and their real estate business and conducting petitioner husband's writing activities.

Beginning in 2004 and throughout the years at issue, Messages, Inc., rented petitioners a two-bedroom apartment in New York City for $1,000 per month. Although petitioners occupied one bedroom of the apartment, other independent contractors hired by Messages, Inc., periodically occupied the second bedroom of the apartment and shared common living space with petitioners approximately one-third of each year.  Living in the New York City apartment permitted petitioners to work onsite at the various call center locations Messages, Inc., temporarily assigned to BCMC for consulting services.

**[\*6]** During the years at issue petitioners traveled to their Gulfport home for personal and business purposes, spending approximately 20% of each year at issue in Gulfport.[5] Petitioners continued to pay mortgage principal and interest on, as well as other expenses associated with, the Gulfport home while staying in New York City.

IV. Petitioner Husband's Writing Activities

Petitioner husband began writing books in 1976; he is the author of Blood, Money & Power: How L.B.J. Killed J.F.K. (Hannover House 2003); Made in the USA: Global Greed, Bad Tax Laws and the Exportation of America's Future (Hannover House 2010); San Antonio Conservation Society v. Texas Department (Gale MOML 2011); and The Verdict: Justice for John Kennedy, Justice for America (Hannover House, release pending).

During the years at issue petitioner husband conducted his writing activities under the name Orchis Publications. He used both the New York City apartment and the Gulfport home in conducting his writing activities.

---

[5]Petitioners also kept their business records with respect to BCMC at their Gulfport home.

**[*7]** V.  Petitioners' Returns

On October 10, 2007, October 18, 2008, and October 21, 2009, petitioners filed joint Forms 1040, U.S. Individual Income Tax Return, for 2006, 2007, and 2008, respectively, reporting that their total tax due was zero for each year.  On attached Schedules C, petitioners reported the following expenses from BCMC and Orchis Publications:[6]

| Expense | 2006 | 2007 | 2008 |
| --- | --- | --- | --- |
| Utilities | $10,800 | $1,560 | $7,778 |
| Travel | 4,800 | 2,400 | 2,721 |
| Taxes and licenses | 120 | --- | --- |
| Repairs and maintenance | 9,600 | --- | --- |
| Office | 6,000 | 1,800 | --- |
| Insurance (other than health) | 460 | 360 | 5,070 |
| Car and truck | 22,580 | 21,900 | 35,466 |
| Other | 2,117 | 3,570 | 2,987 |
| Rent/lease--other business property | 12,000 | --- | 12,000 |
| Business use of home | 5,084 | 20,696 | 2,686 |
| Legal and professional services | 11,200 | --- | --- |
| Interest--other | 14,400 | --- | --- |
| Meals and entertainment | 19,200 | 35,800 | 36,640 |
| Depreciation and sec. 179 | 24,439 | 34,094 | 1,675 |
| Total | 142,800 | 122,180 | 107,023 |

On their 2006 Schedule D, Capital Gains and Losses,  petitioners reported a $172,000 net long-term capital loss with respect to a "real estate office", which,

---

[6]Petitioners combined the business income and expenses relating to BCMC and Orchis Publications on one Schedule C for each year.  Additionally, petitioners wrote "Estimated" on the front of their 2006 return.

**[*8]** because of the section 1211(b) limitation, gave rise to a $3,000 capital loss deduction.

Respondent selected petitioners' returns for examination. During the examination, petitioners submitted Form 1040X, Amended U.S. Individual Income Tax Return, for each year at issue.[7] These returns reported amounts of expenses substantially different from the amounts shown on the originally filed Schedules C. Respondent did not process the amended returns.

## VI. Notice of Deficiency

On July 19, 2012, respondent issued a notice of deficiency to petitioners with respect to 2006, 2007, and 2008, disallowing almost all of petitioners' Schedule C expense deductions claimed for each year, allowing petitioners with respect to their BCMC business only the following deductions:

| Expense | 2006 | 2007 | 2008 |
|---|---|---|---|
| Insurance (other than health) | $278 | $278 | $278 |
| Car and truck | 1,876 | 568 | 2,583 |
| Other | 180 | 478 | 360 |
| Total | 2,334 | 1,324 | 3,221 |

In connection with petitioner husband's writing activities respondent allowed petitioners a $382 deduction for newspaper publication purchases for each

---

[7]On their Forms 1040X for tax years 2006 and 2007, petitioners wrote "Estimated" on the front of each return.

[*9] of the years at issue and deductions of $3,905 and $4,618 for home office expenses with respect to 2006 and 2008, respectively.

Respondent disallowed in full petitioners' claimed 2006 capital loss deduction of $172,000. Other adjustments respondent made in the notice of deficiency are computational and will be resolved by the Court's determination on other issues.

OPINION

I. Burden of Proof

We consider as a preliminary matter petitioners' contentions that the burden of proof should shift to respondent pursuant to section 7491(a). Generally, the Commissioner's determinations in a notice of deficiency are presumed correct and the taxpayer bears the burden of proving the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a)(1) provides an exception that shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability if: (1) the taxpayer introduces credible evidence with respect to that issue, and (2) the taxpayer satisfies other conditions, including substantiation of any item and cooperation with the Government's requests for witnesses, documents, other information, and meetings. Sec. 7491(a)(2); see also Rule 142(a)(2). The taxpayer bears the burden of

**[*10]** proving that he or she has met the requirements of section 7491(a). Rolfs v. Commissioner, 135 T.C. 471, 483 (2010), aff'd, 668 F.3d 888 (7th Cir. 2012).

As discussed infra, petitioners have failed to present credible evidence sufficient to substantiate most items. On those issues, the burden of proof remains with petitioners. With respect to a few factual issues, petitioners presented credible evidence sufficient to substantiate their expenses. Because we decide those issues in petitioners' favor on the preponderance of the evidence, the allocation of the burden of proof in those instances is immaterial. See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008). We therefore need not decide whether petitioners have met the conditions of section 7491(a)(2) required to shift the burden of proof to respondent with respect to those issues.

II. General Principles Governing Substantiation

Deductions are a matter of legislative grace, see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934), and a taxpayer is required to maintain records sufficient to substantiate deductions claimed on his or her return, sec. 6001; sec. 1.6001-1(a), Income Tax Regs. If the taxpayer is able to establish that he or she paid or incurred a deductible expense but is unable to substantiate the precise amount of such expense, the Court generally may approximate the deductible amount, but only if the taxpayer presents sufficient evidence to

**[*11]** establish a rational basis for making the estimate. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Generally, no deduction is allowed for traveling expenses (including meals and lodging while away from home), entertainment expenses, and listed property expenses unless the taxpayer meets stringent substantiation requirements.[8] Secs. 274(d), 280F(d)(4); Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). To deduct such an item, the taxpayer must substantiate through adequate records or other corroborative evidence the following elements: the amount of the expense, the time and place of the expense, and the business purpose of the expense.[9] Sec. 274(d). A taxpayer satisfies the "adequate records" test if he or she maintains an account book, a diary, a log, a statement of expense, trip sheets, or similar records prepared at or near the time of the expenditure and documentary evidence of certain expenditures, such as

---

[8]Listed property includes, among other things, passenger automobiles. See sec. 280F(d)(4)(A)(i).

[9]For entertainment expenses, the taxpayer must also substantiate the business relationship to the taxpayer of persons being entertained. Sec. 274(d)(4).

[*12] receipts or bills, that show each element of each expenditure or use. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Contemporaneous logs are not required, but corroborative evidence to support a taxpayer's reconstruction of the elements of an expenditure or use must have "a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

In the absence of adequate records to establish each element of an expense under section 274(d), a taxpayer may alternatively establish each element: "(A) By his own statement, whether written or oral, containing specific information in detail as to such element; and (B) By other corroborative evidence sufficient to establish such element." Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

III. Loss of Records

Petitioners assert that their tax documents for 2006, 2007, and 2008 were either lost or destroyed in one of three hurricanes: Katrina, Rita, or Gustav.[10] If a taxpayer's records are lost or destroyed through circumstances beyond his or her

_____

[10]We take judicial notice that Hurricanes Katrina, Rita, and Gustav hit the continental United States in August 2005, September 2005, and September 2008, respectively.

**[\*13]** control, the taxpayer may substantiate expenses, including those underlying section 274(d) deductions, through reasonable reconstruction. See Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979); see also Boyd v. Commissioner, 122 T.C. 305, 320 (2004); sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). The burden is on the taxpayer to show that the documentation was actually lost or destroyed because of circumstances beyond his or her control. See Adler v. Commissioner, T.C. Memo. 2010-47, aff'd, 443 Fed. Appx. 736 (3d Cir. 2011). We conclude that petitioners have not met this burden. Hurricanes Katrina and Rita, both of which occurred in 2005, could not have destroyed petitioners' 2006-08 Schedule C tax records, and petitioners have not offered any corroborating evidence, such as insurance claim forms, to show that their Gulfport home suffered any major damage on account of Hurricane Gustav, which occurred in 2008.

In any event and assuming, for the sake of argument, that petitioners' tax records were lost or destroyed by hurricane, we would still conclude that petitioners have failed to provide sufficient secondary evidence to substantiate many of the expenses that are in dispute. Petitioners' secondary evidence consists of worksheets, which, similar to a tax return, show only a list of certain types of expenses and amounts petitioners purportedly paid or incurred next to those

[*14] expenses. Petitioners have not explained how they computed these numbers, and the numbers shown do not correspond with the amounts of expenses reported on their original or amended returns.

In sum, petitioners are not entitled to summarily reconstruct their expenses for purposes of sections 6001 and 274(d).

## IV. Section 162 Expenses

Section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". A trade or business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry and is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940). Conversely, "personal, living, or family expenses" are generally nondeductible. Sec. 262(a).

### A. Lodging Expenses

Respondent contends that New York City was petitioners' tax home during each year at issue; hence, petitioners' lodging expenses incurred in New York City are not allowable. Petitioners disagree; they contend they performed consulting

**[\*15]** services in 12 different cities across the Northeastern United States and that their tax home was in Gulfport.

Section 162(a)(2) permits taxpayers to deduct traveling expenses, including amounts expended for lodging and meals, if such expenses are: (1) ordinary and necessary; (2) incurred while away from home; and (3) incurred in the pursuit of a trade or business. See Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The purpose of this deduction is to alleviate the burden on taxpayers whose business or employment requires them to incur duplicate living expenses. See Tucker v. Commissioner, 55 T.C. 783, 786 (1971); Kroll v. Commissioner, 49 T.C. 557, 562 (1968). In order to deduct travel expenses a taxpayer generally must show that he or she was away from home overnight when the expenses were incurred. See United States v. Correll, 389 U.S. 299 (1967); Strohmaier v. Commissioner, 113 T.C. 106, 115-116 (1999). This Court has held that for purposes of section 162(a)(2) a taxpayer's "home" is generally the vicinity of the taxpayer's principal place of employment. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Daly v. Commissioner, 72 T.C. 190, 195 (1979), aff'd, 662 F.2d 253 (4th Cir. 1981). If a taxpayer does not have a principal place of employment, however, the situs of the taxpayer's permanent residence may be considered his or her tax home. See Johnson v. Commissioner, 115 T.C. 210, 221 (2000); Rambo v. Commissioner, 69

**[\*16]** T.C. 920 (1978); Dean v. Commissioner, 54 T.C. 663 (1970).  A taxpayer who has neither a permanent residence nor a principal place of employment is an itinerant without a tax home.  See Johnson v. Commissioner, 115 T.C. at 221; Wirth v. Commissioner, 61 T.C. 855, 859 (1974).

Additionally, a taxpayer's residence, when different from the vicinity of the taxpayer's principal place of employment, may be treated as the taxpayer's tax home if the taxpayer's employment is "temporary" rather than "indefinite".  Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).  When a taxpayer accepts temporary work in a place away from his residence, he may deduct the living expenses incurred at the temporary post of duty because it would not be reasonable to expect him to move his residence under such circumstances.  See Tucker v. Commissioner, 55 T.C. at 786.  Both the location of a taxpayer's tax home and whether a taxpayer's employment was temporary rather than indefinite are questions of fact to be decided on the entire record.  See Peurifoy v. Commissioner, 358 U.S. at 60-61; Commissioner v. Flowers, 326 U.S. at 470.  The record supports a finding, and we so find, that during each year at issue petitioners had no principal place of employment and their tax home was their permanent residence in Gulfport.

[*17] Petitioners moved into their Gulfport home in 2001 after petitioner wife's parents passed away. From 2001 through 2004 petitioners worked from their Gulfport home. In 2004 petitioners began working for Messages, Inc., on a temporary basis, providing services to not only Messages, Inc., but also a consortium of call centers. Specifically, they provided consulting services to various call center companies in 12 different cities across the States of New York, Massachusetts, New Jersey, and Pennsylvania during the years at issue. The record does not reveal where petitioners stayed while providing consulting services in the 12 different cities, but we deem it fair to assume it was not Gulfport. Although petitioners lived in a New York City apartment rented to them by Messages, Inc., petitioners were required to share that apartment with other independent contractors. Petitioners agreed to provide consulting services to Messages, Inc., and the other call center companies month to month, and petitioners were not required to work for Messages, Inc., exclusively. In fact, petitioners performed consulting services for at least one other party during one or more of the years at issue. Because of our findings that petitioners maintained a permanent residence in Gulfport and had no principal place of employment during

**[*18]** the years at issue, we hold that Gulfport was petitioners' tax home during those years.[11]

Respondent argues that petitioners' work assignments from Messages, Inc., were indefinite rather than temporary within the purview of the flush language in section 162(a), which provides that a "taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year." We disagree. As discussed supra, petitioners provided consulting services month to month and they were required to travel to 12 different cities across the Northeastern United States. Contrary to respondent's contention, we do not find it appropriate to group all of petitioners' work assignments from separately owned call centers to form one period of employment during the years at issue. Rather, we view each of petitioners' work assignments as a separate period of self-employment. We therefore conclude that petitioners' work assignments away from Gulfport did not exceed the 1-year threshold in section 162(a). See Mitchell v. Commissioner, T.C. Memo. 1999-283.

---

[11]We also conclude that petitioners were not itinerants during any of the years at issue because they paid or incurred substantial, continuing, and duplicative living expenses on account of their apartment in New York City and their expenses for their Gulfport home. See Henderson v. Commissioner, T.C. Memo. 1995-559, aff'd, 143 F.3d 497 (9th Cir. 1998).

[*19] Petitioners and respondent agree that petitioners paid $1,000 per month, or $12,000 per year, to rent the New York City apartment. Petitioners submitted substantiation for utility expenses they paid or incurred each tax year for their New York City apartment that are duplicative of the utility expenses they paid with respect to their Gulfport home. Specifically, petitioners paid utility expenses totaling $1,464.62, $2,511.98, and $2,614.34 for 2006, 2007, and 2008, respectively. We thus hold that petitioners are entitled to deduct $13,464.62, $14,511.98, and $14,614.34 for lodging expenses with respect to 2006, 2007, and 2008, respectively.

### B. Meals and Entertainment Expenses

Petitioners claimed deductions of $19,200, $35,800, and $36,640 for meals and entertainment expenses with respect to 2006, 2007, and 2008, respectively. Respondent contends that petitioners are not entitled to these deductions because they have failed to meet the strict substantiation requirements of section 274(d).

Petitioners submitted bank statement and receipts in support of their meals expense deductions claimed on their 2006, 2007, and 2008 returns. For the most part the entries on these bank statements are vague and not self-explanatory, often listing only the name of the business or the address where the purchase or services were provided. Moreover, many of petitioners' receipts are illegible. However,

**[\*20]** some of the receipts are legible, and because of our finding that petitioners were away from Gulfport for business purposes, we conclude that petitioners are entitled to $103.05, $9,603.20, and $4,708.07, before the section 274(n) limitation is applied for each of the years at issue, in deductible meals expenses for 2006, 2007, and 2008, respectively.[12]

Petitioners claim that they are entitled to deduct an undetermined amount of entertainment expenses that they paid or incurred during each of the years at issue. In order to be allowed a deduction for entertainment expenses, the taxpayer must establish that the expenditure was either: (1) directly related to the active conduct of the taxpayer's trade or business, or (2) associated with the active conduct of a

---

[12]To the extent petitioners assert that they are entitled to a per diem amount for meals and incidental expenses for the years at issue, we disagree. It is true that self-employed individuals, such as petitioners, may use an optional per diem method in lieu of using actual expenses to compute their deductible meal and incidental expenses paid or incurred in the course of employment-related travel. See Rev. Proc. 2005-67, 2005-2 C.B. 729; Rev. Proc. 2006-41, 2006-2 C.B. 777; Rev. Proc. 2007-63, 2007-2 C.B. 809; Rev. Proc. 2008-59, 2008-2 C.B. 857. Use of this optional method, however, does not relieve the taxpayer of substantiating the elements of time, place, and business purpose of the travel for that day. See Rev. Proc. 2006-41, sec. 4.03, 2006-2 C.B. at 780; Rev. Proc. 2007-63, sec. 4.03, 2007-2 C.B. at 811-812; Rev. Proc. 2008-59, sec. 4.03, 2008-2 C.B. at 860. As mentioned supra, the record does not show the specific dates that petitioners were working in each of the 12 different cities, but rather petitioners were temporarily assigned to Manhattan and Staten Island, New York; Westborough and Boston, Massachusetts; Orange, Princeton, Ocean, Covington, and Kendall Park, New Jersey; and Philadelphia, Willow Grove, and King of Prussia, Pennsylvania, on unspecified dates.

[*21] trade or business where the expenditure was incurred directly before or directly after a substantial and bona fide business discussion. Sec. 274(a)(1)(A); see also sec. 1.274-2(a)(1), Income Tax Regs. Petitioners submitted numerous theater tickets in support of their claimed deductions for entertainment expenses, but they have failed to show that these expenses were directly related to, or associated with, either BCMC or Orchis Publications.[13] Petitioners are not entitled to these claimed entertainment expense deductions.

C. Car and Truck Expenses

Petitioners claimed deductions of $22,580, $21,900, and $35,466 for car and truck expenses with respect to 2006, 2007, and 2008, respectively. Respondent contends that petitioners are not entitled to more car and truck expense deductions than those allowed in the notice of deficiency because petitioners have failed to meet the strict substantiation requirements of section 274(d).

Petitioners submitted gasoline receipts, parking receipts, repair and oil change receipts, and a handwritten log in support of the car and truck expense

---

[13]On brief petitioners argue that "as a matter of fairness, the entertainment expenses for evening meetings to discuss business and creative opportunities should be acknowledged and allowed as valid deductions to the maximum extent previously allowed [by a 1998 audit examination]." We reject petitioners' argument. Each tax year stands alone, and the Commissioner may challenge for a succeeding year what was condoned or agreed to for a prior year. See Rose v. Commissioner, 55 T.C. 28, 31-32 (1970).

[*22] deductions claimed on their 2006, 2007, and 2008 returns. Many of the entries in the log are indecipherable, bear question marks next to them, and more significantly, fail to show the business purposes of the purported trips or specify the point of origin and destination for each trip. See Fleming v. Commissioner, T.C. Memo. 2010-60; Royster v. Commissioner, T.C. Memo. 2010-16. Additionally, if a taxpayer's traveling expenses are reimbursed or reimbursable, then those expenses are not a necessary expense to the taxpayer and are therefore not deductible under section 162(a). See Podems v. Commissioner, 24 T.C. 21 (1955); Orvis v. Commissioner, T.C. Memo. 1984-533, aff'd, 788 F.2d 1406 (9th Cir. 1986). Petitioners were reimbursed for many of their gasoline purchases and parking expenses by Messages, Inc., and they have failed to establish that the expenses shown by receipts and invoices were not part of those reimbursements. We thus sustain respondent's determination on this issue and hold that petitioners are entitled to no greater deduction for car and truck expenses for each tax year than that allowed by respondent.[14]

---

[14]We are uncertain as to whether petitioners intended to deduct car and truck expenses based on the actual expenses paid, since they submitted receipts for gasoline, or whether they intended to deduct car and truck expenses based on the standard mileage rate, since they also submitted a mileage log. Nonetheless, our holding as to the deductions for car and truck expenses would be the same under either the actual expense basis or the standard mileage rate basis.

**[*23]** D.  Depreciation and Section 179 Expenses

Petitioners claimed deductions of $24,439, $34,094, and $1,675 for depreciation and section 179 expenses with respect to 2006, 2007, and 2008, respectively.  On their amended returns, petitioners claimed no depreciation and section 179 expense deductions for Orchis Publications for 2006, 2007, and 2008, no depreciation and section 179 expense deductions for BCMC for 2006 and 2007, and a $1,675 depreciation and section 179 deduction for BCMC for 2008.  Petitioners have not explained the variance between their 2006 and 2007 original returns and their respective amended returns.  Consequently, we treat the amended returns as a concession that petitioners did not have depreciation and section 179 expenses in those years.  See Badaracco v. Commissioner, 464 U.S. 386, 399 (1984); Scully v. Commissioner, T.C. Memo. 2013-229, at *2 ("Petitioner conceded certain issues by introducing proposed amended returns into the trial record that align with respondent's determinations.").

The $1,675 depreciation and section 179 deduction that petitioners claimed for 2008 relates to depreciation on a "Ford Town Car"--i.e., listed property--that they purportedly used 100% for business purposes in that year.  To be entitled to a depreciation deduction, petitioners must establish the vehicle's depreciable basis by showing the cost of the property, its useful life or recovery period, and the

[*24] previously allowable depreciation.[15]  See Cluck v. Commissioner, 105 T.C. 324, 337 (1995).  This requirement is in addition to the heightened substantiation required by section 274(d) for proving the business use of the asset.  See Dunford v. Commissioner, T.C. Memo. 2013-189.  Petitioners have failed to provide the depreciable basis of the Ford Town Car or the allowable depreciation that they may have claimed for previous years.  Petitioners' logs, mentioned supra, do not meet the strict substantiation requirements of section 274(d).  We thus sustain respondent's determination disallowing petitioners claimed deductions for depreciation expenses.

### E.  Travel Expenses

Petitioners claimed deductions of $4,800, $2,400, and $2,721 for travel expenses with respect to 2006, 2007, and 2008, respectively.  Petitioners have not explained why they paid or incurred these travel expenses except for expenses, totaling $1,831.34, to attend a bankruptcy hearing in 2006 on behalf of a separate corporate entity, 7017 Corporation.[16]  Respondent contends that petitioners are not

---

[15]Petitioners have not argued that the $1,675 deduction was pursuant to sec. 179, nor have they shown that the Ford Town Car was placed in service during 2008.  See sec. 179(a).  We do not address the issue further.

[16]The record is not clear as to petitioners' exact equity percentage in 7017 Corporation.

[*25] entitled to these travel expense deductions because the expenses were incurred in connection with a corporate entity and not on behalf of petitioners' individual trade or business. Respondent further contends that petitioners are not entitled to deduct any remaining claimed travel expenses because they have failed to meet the strict substantiation requirements of section 274(d).

Generally, an individual is precluded from claiming a deduction of a corporation. Moline Props., Inc. v. Commissioner, 319 U.S. 436 (1943). Payments made by a shareholder to his corporation or to a third person for the benefit of the corporation are neither deductible business expenses of the shareholder nor expenses incurred for the production of income. Markwardt v. Commissioner, 64 T.C. 989, 995 (1975). Rather, such payments are treated as contributions to capital by the shareholder and must be regarded as an additional cost of the stock. Id. A deduction is allowable only if the expenditures are made to protect or promote the shareholder's own trade or business. Id. The trade or business of the corporation must be considered separately from the trade or business of the shareholder. Id.

Petitioners assert that they are entitled to deduct the traveling expenses because 7017 Corporation was created for investment purposes and that the corporation "was defunct and, as a matter of law, the business became an assumed

[*26] name owned by petitioners as their business and debt." On brief, petitioners state: "The Texas corporation was started in 1998 and was dissolved before any business was conducted. Reinstatement was made in 2006 for notice purposes; however, it was totally inactive." On the basis of petitioners' admission that the corporation was a separate entity in 2006, we conclude that petitioners are not entitled to individually deduct the traveling expenses related to 7017 Corporation's bankruptcy hearing.

Petitioners also maintain that they are entitled to deduct undetermined amounts of travel expenses for the years at issue. The expenses of traveling away from home, including transportation costs, are subject to strict substantiation requirements. Sec. 274(d)(1). To deduct travel expenses the taxpayer must substantiate the amount of each expense, the dates of departure and return for each trip, the destination of travel, and the business reason for the trip. See sec. 1.274-5T(b)(2), (c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46017 (Nov. 6, 1985). Petitioners submitted bank records and third-party invoices that purport to show that they purchased airline tickets during the years at issue, but they have failed to substantiate the amounts of these expenses or show that any of these trips had a business rather than a personal purpose. We thus sustain

[*27] respondent's determination disallowing petitioners' claimed deductions for travel expenses.

F. Repairs and Maintenance and Interest Expenses

On their original 2006 return petitioners claimed deductions of $9,600 for "Repairs and maintenance" and $14,400 for "Interest--Other". On their amended 2006 return, petitioners did not claim these deductions. Petitioners have not explained the variance, nor have they explained what repairs and maintenance and interest expenses they paid or incurred during 2006; hence, we treat petitioners' amended return as a concession. See Badaracco v. Commissioner, 464 U.S. at 399; Scully v. Commissioner, at *2. We thus sustain respondent's determination disallowing petitioners' claimed deductions for repairs and maintenance and interest expenses.

G. Taxes and Licenses

On their original 2006 return petitioners claimed a deduction of $120 for taxes and licenses expenses. Petitioners have not explained what taxes and license fees they purportedly paid or incurred during 2006. The record does show, however, that petitioners were required to pay to the City of Gulfport in 2008 a "Privilege License Renewal" fee of $71.60 with respect to BCMC and Orchis

[*28] Publications.  On the basis of this invoice, we find that petitioners are entitled to deduct $71.60 for taxes and licenses expenses for 2008.

### H.  Office and Other Expenses

Petitioners claimed deductions of $8,117, $5,370, and $7,783 for office and other expenses on their 2006, 2007, and 2008 returns, respectively.  On brief, respondent conceded that petitioners were entitled to deduct for 2007 $201.48 of delivery costs and expenses and $100.69 of office expenses.  See supra note 2.

Petitioners' bank records and receipts show that they paid or incurred $4,284.85, $3,240.40, and $3,236.76 of postage and delivery costs during 2006, 2007, and 2008, respectively.  The bank records and receipts do not show whether the postage and delivery costs were for personal or business purposes.  Nonetheless, we are convinced, on this record, that petitioners paid or incurred the aforementioned postage and delivery expenses in part for business purposes.  After considering respondent's 2007 postage and delivery costs concession, and bearing heavily against petitioners whose inexactitude is of their own making, we conclude that 20% of the postage and delivery costs were for business purposes and thus petitioners are entitled to deduct $856.97, $849.56, and $647.35 of

**[*29]** postage and delivery costs for 2006, 2007, and 2008, respectively.[17] See

Cohan v. Commissioner, 39 F.2d at 543-544.

Petitioners' bank records and receipts show that petitioners paid or incurred

office expenses, primarily from Staples and Office Depot, totaling $780.18,

$460.35, and $182.04 for 2006, 2007, and 2008, respectively, and we hold that

petitioners are entitled to deduct these office expenses as ordinary and necessary

expenses.

I. Legal and Professional Services

Petitioners claimed a deduction of $11,200 for legal and professional

services expenses on their 2006 return. These legal and professional services

expenses were purportedly paid for the bankruptcy hearing petitioners initiated on

behalf of 7017 Corporation and to assist petitioner wife in a suit against Discover

Card. As discussed supra, petitioners are precluded from deducting expenses

attributable to a corporation on their individual tax returns. See Moline Props.,

Inc. v. Commissioner, 319 U.S. 436. Petitioners have failed to show that the debts

petitioner wife incurred on her Discover Card were attributable to business as

opposed to personal purposes. Therefore, petitioners are also precluded from

---

[17]The amount allowed for 2007 includes respondent's $201.48 concession in petitioners' favor on brief. See supra.

[*30] deducting those attorney's fees. See United States v. Gilmore, 372 U.S. 39, 46 (1963). We thus sustain respondent's determination disallowing petitioners' claimed deductions for legal and professional services.

J. Insurance (Other Than Health)

Petitioners claimed deductions of $460, $360, and $5,070 for insurance (other than health) expenses with respect to 2006, 2007, and 2008, respectively. Petitioners have not explained what insurance expenses they paid or incurred during the years at issue, nor does the record support petitioners' claimed deductions. We thus sustain respondent's determination on this issue and hold that petitioners are entitled to no greater deduction for insurance (other than health) expenses for each year than respondent has allowed.

K. Home Office Expenses

Petitioners claimed deductions of $5,084, $20,696, and $2,686 for home office expenses they paid or incurred with respect to 2006, 2007, and 2008, respectively. On their amended tax returns, and with respect to BCMC, petitioners claimed no home office expense deductions for 2006 and 2007 and a $66,618 home office expense deduction for 2008. On their amended tax returns, and with respect to Orchis Publications, petitioners claimed home office expense deductions of $3,509, $2,470, and $1,135 with respect to 2006, 2007, and 2008,

[*31] respectively.  Respondent conceded in the notice of deficiency that petitioners were entitled to home office expense deductions of $3,509 and $4,618 for 2006 and 2008, respectively, with respect to Orchis Publications.[18]  Because of respondent's concessions and because we treat petitioners' amended returns as a concession, see Badaracco v. Commissioner, 464 U.S. at 399; Scully v. Commissioner, at *2, we consider only petitioners' claimed $2,470 and $66,618 home office expense deductions for 2007 and 2008, respectively.

Section 280A(a) disallows a deduction for business use of a taxpayer's personal residence, with a few limited exceptions.  One such exception in section 280A(c)(1) provides that the general disallowance rules do not apply "to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis * * * (A) as the principal place of business for any trade or business of the taxpayer".  "Exclusively used" is narrowly construed and requires that the taxpayer use " 'a specific part of a dwelling unit solely for the purpose of carrying on his trade or business'".  Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987) (quoting S. Rept. No. 94-938, at 148 (1976), 1976-3

_____

[18]Respondent apparently did not permit petitioners to deduct home office expenses for 2007 with respect to Orchis Publications because it did not have gross income in that year.  See sec. 280A(c)(5).  Respondent also apparently conceded that petitioners were entitled to deduct more home office expenses than they reported on their 2008 original and amended returns.

[*32] C.B. (Vol. 3) 49, 186, and H.R. Rept. No. 94-658, at 161 (1975), 1976-3 C.B. (Vol. 2) 695, 853). A dwelling unit is used on a "regular basis" when used more than occasionally or incidentally. See Fadeley v. Commissioner, T.C. Memo. 2008-235. Generally, personal use of a room will preclude its use in computing depreciation or other allocable expenditures. Id.

As another exception to the general disallowance rule of section 280A(a), subsection (c)(2) allows a deduction for items that are allocable to space within the home that the taxpayer uses on a regular basis to store inventory or product samples. See, e.g., Hefti v. Commissioner, T.C. Memo. 1988-22, aff'd without published opinion, 894 F.2d 1340 (8th Cir. 1989). To qualify for this exception, the taxpayer must use the inventory or product samples in the taxpayer's trade or business of selling products at retail or wholesale, and the home must be the sole fixed location of the taxpayer's trade or business. Sec. 280A(c)(2).

Petitioners reported on their 2008 amended return that they incurred home office expenses relating to BCMC and with respect to their personal residence in Gulfport and their New York City apartment. Because we have held that petitioners are entitled to deduct lodging expenses with respect to the New York City apartment and because they have failed to provide any evidence that they incurred additional home office expenses, they are not entitled to additional home

[*33] office expense deductions for that apartment.  See Scully v. Commissioner, at *7; Wilhelm v. Commissioner, T.C. Memo. 1983-274.  Regarding petitioners' home office expense deductions for their Gulfport home, they reported on Form 8829, Expenses for Business Use of Your Home, that they used 32.35% of their home exclusively for business purposes and that they are entitled to deduct $33,116 of  expenses.  Petitioners have not substantiated the $33,116 of expenses that they reported on Form 8829, nor have they shown that they used the 32.35% portion of their home exclusively for business or inventory purposes.  We thus conclude that petitioners are not entitled to home office expense deductions for BCMC for 2008.

Petitioners reported on their 2007 amended return that they incurred home office expenses relating to Orchis Publications and their personal residence in Gulfport.  Section 280A(c)(5) provides a limitation on the amounts of deductions allowed under various sections including section 280A(c)(1) and (2).  Specifically, section 280A(c)(5) provides that the deductions allowed shall not exceed the excess of the gross income derived from the trade or business use for the taxable year, over the sum of certain deductions such as interest and taxes.  Because Orchis Publications did not have gross income in 2007, petitioners are precluded

[*34] by section 280A(c)(5) from deducting any home office expenses with respect to Orchis Publications for that year.

We thus sustain respondent's determination on this issue and hold that petitioners are entitled to no greater deduction for home office expenses for each year at issue than respondent has allowed.

## V. Capital Loss and Capital Loss Carryover

On their original 2006 return, petitioners claimed a $172,000 long-term capital loss from the sale of a "real estate office". On their amended 2006 return, petitioners claimed a $130,000 long-term loss from the sale of the real estate office, a net short-term capital loss carryover of $33,000, and a net long-term capital loss carryover of $230,000. Attached to the amended return on Form 4797, Sales of Business Property, petitioners reported ordinary losses totaling $275,000. Petitioners also contend that they are entitled to a $376,113.54 loss attributable to the failed bankruptcy of 7017 Corporation in 2006.

### A. Petitioners' Capital Losses

Section 165(a) generally permits a taxpayer to claim as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Losses from sales or exchanges of capital assets are allowed as deductions only to the extent prescribed in sections 1211 and 1212. Sec. 165(f).

**[\*35]** Under those limitations, a taxpayer must first offset capital losses against capital gains; if aggregate capital losses exceed aggregate capital gains, the taxpayer may deduct up to $3,000 of the excess against ordinary income. Sec. 1211(b). Capital losses exceeding the section 1211(b) limitation may then be carried forward to subsequent tax years. Sec. 1212(b).

Petitioners reported on their 2006 Schedule D a net long-term capital loss of $172,000, which they represented on their original return resulted from the sale on April 1, 2004, for $78,000 of a "real estate office" that had been acquired on July 1, 1999, for $250,000. On their amended 2006 Schedule D, petitioners represented that this same real estate office had been sold on May 1, 2006, for $120,000 and that it had been acquired on August 8, 1999, for $250,000. Petitioners have not explained this discrepancy. More significantly, petitioners have not explained the events leading up to the purported sale of the real estate office. There is nothing in the record--other than petitioners' returns and self-serving testimony--that substantiates the capital loss deductions petitioners claimed on their original and amended returns. Taxpayers' returns alone do not substantiate deductions or losses. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Thompson v. Commissioner, T.C. Memo. 2011-291. Given the apparent inconsistencies in petitioners' original and amended returns, and absent

**[*36]** any corroborating evidence to substantiate the capital loss, we conclude that petitioners are not entitled to the claimed capital loss deduction for 2006 for the purported sale of the real estate office.

Petitioners additionally claimed a net short-term capital loss carryover deduction of $33,000 and a net long-term capital loss carryover deduction of $230,000 on their 2006 amended return. Section 172(a) allows a taxpayer to deduct a net operating loss (NOL) for a taxable year that equals the sum of the NOL carryovers plus NOL carrybacks to that year. A taxpayer claiming an NOL deduction bears the burden of establishing both the existence of the NOL and the amount of any NOL that may be carried over to the subject years. Rule 142(a)(1); United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955); Green v. Commissioner, T.C. Memo. 2003-244.

Petitioners have not explained what net operating capital losses they incurred in previous years nor have they explained how they computed them. We thus hold that petitioners are not entitled to deduct their claimed net short- and long- term capital loss carryovers on their 2006 amended return.

B. Sale of Business Property

Petitioners reported on Form 4797, Sales of Business Property, filed with their amended return for 2006, ordinary losses totaling $275,000 from the sale or

**[*37]** disposition of four properties: "jewelry", "real estate", "BMP", and "real estate license". There is nothing in the record to explain these sales or dispositions, nor anything that explains how petitioners determined their bases in these properties. We thus hold that petitioners are not entitled to their claimed ordinary loss deduction for these properties.

    C.  <u>Bankruptcy of 7017 Corporation</u>

Petitioners contend that for 2006 they are entitled to a $376,113.54 loss deduction with respect to personal guaranties that they purportedly gave with respect to obligations of 7017 Corporation. As stated <u>supra</u>, 7017 Corporation filed for bankruptcy in 2006. Petitioners submitted a "Summary of Schedules" sheet from the U.S. Bankruptcy Court, Southern District of Texas, Houston Division, that shows that 7017 Corporation claimed no assets and $376,113.54 of liabilities when it filed for bankruptcy. Petitioners have offered no explanation for how these purported liabilities arose, and they have not produced any evidence that shows they are personally liable for or have paid the remaining debts of 7017 Corporation. We thus hold that petitioners are not entitled to any deductions for these losses.

**[*38]** VI. <u>Accuracy-Related Penalties</u>

Respondent determined that petitioners are liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of income tax for each year at issue. Section 6662(a) imposes a 20% penalty on any portion of an underpayment that is attributable to, among other things, a substantial understatement of income tax. There is a "substantial understatement" of income tax for any tax year where the amount of the understatement exceeds the greater of (1) 10% of the tax required to be shown on the return for the tax year or (2) $5,000. Sec. 6662(d)(1)(A). "Understatement" means the excess of the amount of tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A).

The Commissioner bears the burden of production with respect to the accuracy-related penalty. <u>See</u> sec. 7491(c). Generally, this means that the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Once the Commissioner has done so, the burden of proof is on the taxpayer to show that the penalty does not apply. <u>See</u> <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001). In accordance with our findings and conclusions in this opinion, petitioners' understatement will exceed $5,000 for each tax year. <u>See</u> sec. 6662(b)(2), (d)(1)(A)(ii). Therefore, we hold

**[\*39]** that respondent has met his burden of production regarding the accuracy-related penalty pursuant to section 6662(a).

The accuracy-related penalty is not imposed with respect to any portion of an underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether a taxpayer acted with reasonable cause and in good faith depends upon all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in the light of the taxpayer's experience, knowledge, and education. Id.

Petitioners claim that they are not liable for the accuracy-related penalty because they "made reasonable attempts to comply and did fully comply in the reconstruction of records" and that they "expended considerable time and effort to comply with the [Internal Revenue] Code."

Petitioners omitted income and claimed deductions to which they were not entitled and for which they failed to substantiate related expenses. Before and during the years at issue, petitioners started and operated various businesses, including a successful consulting business, and petitioner husband is a former attorney. We find that petitioners have not shown reasonable cause and good faith

**[*40]** with respect to their underpayment of tax for each year at issue. Accordingly, and in accordance with our findings and conclusions in this opinion, we hold that petitioners are liable for the section 6662(a) penalty for a substantial understatement of income tax with respect to the underpayment of tax for each year at issue.

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155.</u>