T.C. Memo. 2015-83

UNITED STATES TAX COURT

CHRISTOPHER HOLDEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24316-12, 15802-13.[1]          Filed April 29, 2015.

<u>Walter D. Channels</u>, for petitioner.

<u>Jenny R. Casey</u> and Blake J. Corry (specially recognized), for respondent.

_____

[1]These cases are consolidated for purposes of trial, briefing, and opinion.

[*2]       MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  In separate notices of deficiency, respondent determined deficiencies in petitioner's Federal income tax for 2008 and 2009 (years at issue)[2] as well as accuracy-related penalties under section 6662(a)[3] as follows:

| Year | Deficiency | Penalty sec. 6662 |
|------|------------|-------------------|
| 2008 | $206,138   | $41,227.60        |
| 2009 | 125,681    | 25,136.20         |

Petitioner resided in California at the time he timely petitioned this Court for redetermination of the determined deficiencies and accuracy-related penalties. See sec. 6213(a).

The parties were able to resolve a number of issues reflected in the stipulation of settled issues, the stipulations of fact, and the opening briefs.  After the parties' concessions, the following issues remain for decision:

---

[2]Petitioner's 2007 tax year is before the Court in a related case, docket No. 14915-11.  That case has not been consolidated with the present ones.  While the factual backgrounds in these cases are similar, the issues presented for resolution and the evidence submitted by the parties differ.  We express no opinion on the issues presented in docket No. 14915-11.

[3]All section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[*3]  (1) whether petitioner is entitled to deduct real estate taxes and mortgage interest in excess of amounts that respondent already allowed for the 2008 tax year.  We hold that he is not;

(2) whether petitioner is entitled to deduct mortgage interest in excess of amounts that respondent already allowed for the 2009 tax year.  We hold that he is not;

(3) whether petitioner is entitled to deduct the following business expenses not already conceded by petitioner or respondent for the 2008 tax year:  leases, contract labor, bank service charges, continuing education, miscellaneous expenses, and office supplies.  We hold that petitioner may deduct as an additional contract labor expense a payment made to Rick Wong.  Otherwise, we hold that petitioner is not entitled to deduct any other business expenses;

(4) whether petitioner is entitled to deduct the following business expenses not already conceded by respondent or petitioner for the 2009 tax year:  outside services, leases, contract labor, miscellaneous expenses, payroll expenses, and professional fees.  We hold that he is not; and

(5) whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) for the 2008 and 2009 tax years.  We hold that he is.

**[*4]**                                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  We incorporate by this reference the parties' stipulations of facts, stipulation of settled issues, and accompanying exhibits.

Petitioner was divorced from Karen Holden in August 2007.  On May 31, 2008, petitioner married Ninpapha B. Niangnouansy and remained married to Niangnouansy throughout the 2009 tax year.  Petitioner claimed a filing status of single on his 2008 and 2009 tax returns.  Petitioner concedes that his proper filing status for the years at issue was married filing separately.

On August 17, 2009, petitioner filed a bankruptcy petition under chapter 7 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California.  Petitioner was granted a discharge in bankruptcy on March 5, 2010.  In his bankruptcy petition, petitioner failed to disclose that he was married or to include his wife's income.

Petitioner is a medical doctor specializing in geriatric medicine with a family practice in Orange, California.  At all times during the years at issue petitioner operated this medical practice and was the only doctor providing medical services at his practice.  Petitioner is a cash basis taxpayer.

**[\*5]** Before 2008 petitioner was the sole shareholder of and operated his medical practice through Christopher Holden, M.D., Inc. (CHMDI). At the end of 2008 Dr. Anjana Sura was the sole shareholder of CHMDI. Beginning in mid-March 2008 and throughout 2009, petitioner deposited the receipts from his medical practice into the various bank accounts of Discover Wellness Health Association (Discover Wellness), a partnership; SVP Enterprises, Inc. (SVP), a C corporation; and Holden Medical Corp. (HMC), an S corporation. Petitioner was the sole shareholder of HMC during the 2009 tax year. Petitioner was neither a partner of Discover Wellness nor a shareholder of SVP or CHMDI during the years at issue. All of the gross receipts deposited into the accounts of Discover Wellness, SVP, CHMDI, and HMC are petitioner's gross business receipts for 2008 and 2009. Petitioner's gross receipts from his medical practice in 2008 and 2009 totaled $921,178 and $718,965, respectively.

Jane Garcia worked as the office manager for petitioner's medical practice from 2004 through July 2009. Garcia is listed as the 100% partner of Discover Wellness on its 2008 and 2009 Forms 1065, U.S. Return of Partnership Income; Schedules B, Other Information; and/or Schedules K-1, Partner's Share of Income, Deductions, Credits, etc. Garcia is listed as being a 100% shareholder and

**[*6]** probusinesscoach.com is simultaneously listed as a 100% shareholder of SVP on SVP's 2008 and 2009 Forms 1120, U.S. Corporation Income Tax Return.

The parties agree that all gross receipts and expenses of petitioner's medical practice shall be reported on Schedules C, Profit or Loss From Business, of petitioner's tax returns for the years at issue, including gross receipts received and expenses paid by Discover Wellness, CHMDI, SVP, and HMC.

I. 2008 Tax Year

A. Schedule A Deductions

On his Schedule A, Itemized Deductions, for the 2008 tax year, petitioner claims a mortgage interest deduction of $60,855[4] and a real estate tax deduction of

---

[4]On brief petitioner claims for the first time that he is entitled to a home mortgage interest deduction of $64,855 in addition to the $4,048.49 that respondent already conceded, totaling $68,903.49. In the first stipulation of facts the parties agree that the remaining amount at issue for the 2008 tax year is $56,806.51. Pursuant to Rule 91(e), a party's stipulations shall be binding. Rule 91(e) further provides that no party to a stipulation is permitted to change, qualify, or contradict a stipulation in whole or in part, absent permission of the Court. Petitioner did not move the Court to be relieved of this stipulation and is thus bound by it. Furthermore, petitioner raised the issue of additional deductions improperly. See Carraway v. Commissioner, T.C. Memo. 1994-295, 1994 WL 284068, at *7 (holding that where the taxpayers first claimed at trial an amount in excess of the amount previously claimed as a deduction, the taxpayers improperly raised the issue).

[*7] $15,072.  Petitioner concedes all but $7,196.11 of the real estate tax deduction.[5]  Respondent concedes petitioner is entitled to a mortgage interest deduction of $4,048.49 for payments made to Countrywide Home Loans for the home in Placentia, California.  At the end of 2008 the principal balance of the home loan with Countrywide Home Loans was $667,017.15.

B.  Leases

For the 2008 tax year petitioner claims a Schedule C lease deduction of $74,143.15 for his medical practice.[6]  In December 2006 CHMDI entered into a master lease agreement with Key Equipment Finance Inc. (Key), to purchase computer equipment and software from MedSoft Solutions, Inc. (MedSoft), for petitioner's medical office in Orange, California.  In December 2006 CHMDI entered into an equipment lease contract with Marlin Leasing Corp. (Marlin) to lease computer equipment and software from Medsoft for petitioner's Anaheim, California, office, which closed in 2007.  At the end of the Marlin lease there was

---

[5]On brief petitioner claims that he is entitled to deduct $7,196.11 for real estate taxes.  We deem that petitioner concedes the remainder of the $15,072 amount.

[6]On brief petitioner claims that he is entitled to a lease expense deduction of $77,698.95.  In the first stipulation of facts the parties agree that the amount of the lease expense at issue for the 2008 tax year is $74,143.15.  Petitioner did not move the Court to be relieved of this stipulation.  Pursuant to Rule 91(e) a party's stipulation shall be binding.  See supra note 4.

[*8] a $101 buyout option. Other than the lease agreements with Marlin and Key, petitioner failed to provide any other lease agreements.[7] In 2008 SVP made payments to Marlin and Key.

On its 2008 tax return CHMDI reported that it had depreciable assets of $313,104 and accumulated depreciation of $194,359 at the beginning of the 2008 tax year.

There are no depreciable assets or depreciation expenses listed at yearend on the 2008 tax returns of Discover Wellness, SVP, and CHMDI. For 2007 petitioner's accountant treated some of the equipment leases as capital leases and others as operating leases. Petitioner's 2009 bankruptcy petition listed equipment leases on his Schedule D, Creditors Holding Secured Claims, with values totaling $397,891.75. Petitioner did not enter into any equipment leases in 2008 or 2009.

---

[7]Petitioner contends that any other lease agreements, as well as loan documents, bank statements, canceled checks, credit card statements, invoices, and records stored on a hard drive were lost as a result of flooding in his office.

**[*9]** C.  Contract Labor

Petitioner claims a contract labor expense deduction of $100,973.42, of which $53,783.21 is still at issue.[8]  The amounts still at issue are set forth more fully, reflecting the payees and corresponding amounts, as follows:

| Payee | Amount |
|-------|--------|
| Leo Miguez | $15,966.67 |
| KN Enterprises | 26,283.72 |
| Ninpapha Niangnouansy | 1,600.00 |
| Jack Padilla | 75.00 |
| Spa N Mor | 2,560.81 |
| Bank of America | 4,266.96 |
| Rick Wong | 838.80 |
| Garret Hess | 191.25 |
| Unknown (check No. 1671) | 500.00 |
| Ralph Dudley | 1,500.00 |
| Total | 53,783.21 |

KN Enterprises (KN), a salon, is a partnership of which petitioner's wife, Niangouansy, is a 99% partner.  KN failed to file a tax return for 2008.

---

[8]On brief petitioner asserts that he is entitled to deduct $50,098.20 of contract labor expenses in excess of the amount that respondent already allowed. We observe that this amount is $3,685.01 less than the amount that respondent disallowed.

**[*10]** D. <u>Bank Service Charges</u>

After the parties' concessions, petitioner claims an additional bank service charges deduction of $551, consisting of payments to Chase Card Services of $140 and $411.

E. <u>Continuing Education</u>

After the parties' concessions, petitioner claims an additional continuing education deduction of $758.50 for five payments made to Daniel Wotring for flight instruction. Petitioner did not complete the pilot program.

F. <u>Miscellaneous Expenses</u>

After the parties' concessions, petitioner claims an additional miscellaneous expense deduction of $123,989.87. The specific items still at issue are as follows:

| Payee | Amount |
|---|---|
| Capital One | $15,322.08 |
| Business card | 25,160.40 |
| American Express | 6,532.00 |
| Advanta | 9,037.00 |
| Union Capital DES lease | 13,107.50 |
| Home Depot/Home Depot Credit/Home Depot Credit Services | 13,960.31 |
| Capital One DES loan | 1,765.26 |
| Leasing services | 1,430.75 |

| | |
|---|---:|
| **[*11]** FFF Enterprises | 1,200.00 |
| Citizens Bank | 631.27 |
| Cash withdrawal | 500.00 |
| Washington Mutual | 100.00 |
| Discover | 191.00 |
| Missing checks | 11,991.89 |
| Platinum Plus | 500.00 |
| Rockpart Consulting | 820.00 |
| Leo Miguez | 1,500.00 |
| Bank of America Leasing | 1,201.38 |
| Popular Leasing USA Inc. | 4,931.14 |
| Citi cards | 250.00 |
| IFC | 994.02 |
| Great America | 1,223.22 |
| KN Enterprises | 1,100.00 |
| Christopher Holden | 3,000.00 |
| Chase Home Finance | 3,070.10 |
| Key Equipment Finance | 1,568.57 |
| GE Healthcare | 2,877.98 |
| Learsone | 4.00 |
| Total | 123,989.87 |

**[*12]** G.  Office Supplies

After the parties' concessions, petitioner claims an additional deduction for office supplies of $995.88 for a payment made to Mike's Tint Shop.

II.  2009 Tax Year

A.  Mortgage Interest

Petitioner claims a Schedule A mortgage interest deduction for the 2009 tax year of $53,225.[9]  Respondent concedes petitioner is entitled to a deduction of $45,608.56 for mortgage interest paid to Bank of America on the property in Placentia, California.  After petitioner's concessions,[10] the amount of mortgage interest still at issue is $3,704.  The principal balance of the home loan with Bank of America was $659,020.27 at the end of 2009.

---

[9]On brief respondent erroneously stated that the amount of home mortgage interest at issue for the 2009 tax year was $60,855, rather than $53,225 as reported on petitioner's 2009 tax return and disallowed by respondent in the notice of deficiency.

[10]After respondent's concessions, the amount of home mortgage interest remaining at issue for the 2009 tax year was $7,616.44.  On brief petitioner claims that he is entitled to an additional deduction in excess of respondent's concessions of $3,704.  Petitioner does not assert that he is entitled to deduct the remaining $3,912.44 of home mortgage interest not conceded by respondent.  We deem this $3,912.44 amount to be conceded by petitioner on brief.

**[*13]**  B.  <u>Outside Services</u>

After the parties' concessions, petitioner claims an additional deduction for outside services of $27,000, consisting of three payments of $9,000 each to Nibiru Rising, Inc. (Nibiru), a C corporation of which petitioner is the sole shareholder. According to Nibiru's Form 1120, Schedule K, Other Information, its business consisted of advertising and public relations.  Petitioner claims he set up Nibiru to do a special research project.  Petitioner paid Nibiru a total of $92,000 in 2009, $90,000 of which was paid from August through December 2009.  These payments to Nibiru were classified as outside services, contract labor, miscellaneous expenses, and professional fees.  Petitioner failed to list Nibiru as an entity of which he owned 5% or more on his August 2009 bankruptcy petition.

C.  <u>Leases</u>

Petitioner claims a deduction of $12,301.63 for leases; the entire amount is still at issue.

D.  <u>Contract Labor</u>

After the parties' concessions, petitioner claims an additional contract labor expense deduction of $100,712.54.  This amount still at issue is set forth more fully, reflecting the payees and the corresponding amounts, as follows:

| [*14] Payee | Amount |
|---|---|
| KN Enterprises | $44,682.54 |
| Bank of America | 30.00 |
| Nibiru Rising, Inc. | 56,000.00 |
| Total | 100,712.54 |

Of the amounts paid to KN, $9,800 was paid in November 2009 and $9,000 was paid in December 2009. No documents other than canceled checks were provided to substantiate these expenses.

E. Miscellaneous Expenses

After the parties' concessions, petitioner claims an additional miscellaneous expense deduction of $50,757.19. The amount still at issue is set forth more fully, reflecting the payees and corresponding amounts, as follows:

| Payee | Amount |
|---|---|
| Capital One | $30.00 |
| Business card[1] | 8,848.76 |
| American Express | 60.00 |
| Nibiru Rising, Inc. | 8,000.00 |
| Union Capital DES | 1,456.39 |
| Home Depot/Home Deport Credit Home Depot Credit Services | 16,068.87 |
| Chase Card Services | 1,000.00 |

| | |
|---|---:|
| **[\*15]** Business card[1] | 9,848.76 |
| Christopher Holden/CHMDI | 248.54 |
| Union Bank | 1,995.87 |
| Online transfer | 500.00 |
| Chase | 1,000.00 |
| Citi cards | 1,000.00 |
| Withdrawal | 700.00 |
| Total | 50,757.19 |

[1]Petitioner's general ledger, as reconstructed by petitioner's counsel for the purposes of trial, shows two groups of payments to payee Business Card.  The first group of payments consists of six checks from SVP to Business Card in the following amounts:  $1,000 (check No. 1053); $1,000 (check No. 1108); $200 (check No. 1279); $400 (check No. 1280); $1,000 (check No. 1372); and $5,248.76 (check No. 1408).  The total amount of payments made by SVP to Business Card is $8,848.76.  The second group of payments consists of a single check from Discover Wellness to Business Card of $1,000 (check No. 1039).  The seven payments to Business Card totaled $9,848.76.  We believe that respondent may have counted the first group of checks twice in determining the amount of miscellaneous expenses still left at issue for the 2009 tax year.  Petitioner did not contest the accuracy of these amounts in either his opening or his reply brief.  We deem that petitioner has conceded this issue.

Petitioner has provided no documents other than canceled checks and partial bank statements to substantiate these miscellaneous expenses.

**[*16]** F.  Payroll Expenses

After the parties' concessions, petitioner claims an additional payroll expense deduction of $100 for a check made payable to SVP written on its own account.[11]

G.  Professional Fees

After the parties' concessions, petitioner claims an additional professional fees deduction of $1,000 for a payment made to Nibiru.

III.  Tax Return Preparation

Petitioner's 2008 Form 1040, U.S. Individual Income Tax Return, was prepared by Ashley B. Hallsman, and his 2009 Form 1040 was prepared by Shahid Ali of ETax Services, Inc.

IV.  Document Destruction

Petitioner claims his books and records for the years at issue were destroyed as a result of flooding that occurred in his medical office.  According to petitioner's business insurance report, two insurance claims have been filed:  the first was for a loss on September 29, 2007, of $11,728.46 due to a burst water

---

[11]Respondent contends that there is no evidence in the record to substantiate that this check is anything other than a transfer to another SVP bank account.

**[*17]** pipe, and the second was for a loss on December 13, 2009, of $350 due to heavy rain.

## OPINION

### I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed to be correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof may shift to the Commissioner with respect to factual matters if the taxpayer meets certain requirements. Petitioner has neither alleged that section 7491(a) applies nor established compliance with its requirements. Petitioner bears the burden of proof.

Petitioner claims that he is entitled to various itemized and business expense deductions in excess of amounts that respondent already allowed or conceded for each of the years at issue. Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); see Rule 142(a); Welch v. Helvering, 290 U.S. at 115. A taxpayer is

[*18] required to maintain sufficient records to substantiate expenses underlying the deductions he claims on his Federal income tax returns.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.; see also Hradesky v. Commissioner, 65 T.C. 87, 90 (1976), aff'd, 540 F.2d 821 (5th Cir. 1976).

II.  Perception of Witnesses

We observe the sincerity, candor, and demeanor of each witness to evaluate his testimony and to assign weight thereto for the purpose of finding disputed facts.  HIE Holdings, Inc. v. Commissioner, T.C. Memo. 2009-130, 2009 WL 1586044, at *85, aff'd, 521 Fed. Appx. 602 (9th Cir. 2013).  We determine each witness' credibility, weigh every piece of evidence, draw appropriate inferences, and choose between often conflicting inferences when we find the facts of a case. Id.  We will not accept the testimony of a witness at face value if we find that the totality of facts conveys to us an impression that is contrary to the witness' testimony.  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 84 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

During the trial we heard testimony from two fact witnesses:  petitioner and Garcia.  Garcia's testimony was often vague, conclusory, made without substantiating support, and of limited helpfulness to the Court.  Garcia's testimony with respect to the purported loss of petitioner's documents was self-contradictory

[*19] and not credible. Petitioner's testimony was vague and unhelpful. Petitioner testified that he could not recall many of the material facts in this case. He attempted to avoid answering questions posed to him with respect to his interest in Nibiru. Petitioner then testified that he did not recall whether he had any ownership interest in Nibiru despite being the sole shareholder thereof. Petitioner affirmatively represented himself as single on his 2008 and 2009 tax returns and on his 2009 bankruptcy petition, despite being married during the years at issue. Petitioner filed his 2009 bankruptcy petition without disclosing his wife's income or his ownership interest in Nibiru. Petitioner made substantial payments to Nibiru after filing for bankruptcy. On the basis of his testimony and the entirety of the record, we find that petitioner was generally not a credible witness.

## III. Real Estate Taxes

Section 164(a) permits a taxpayer to deduct any State, local, or foreign property taxes that are paid or accrued during the taxable year. Petitioner contends that for his 2008 tax year he is entitled to deduct $7,196.11 of real estate taxes in excess of amounts that respondent already allowed. Petitioner failed to provide documentation to establish that he personally paid or owed such real estate taxes. Petitioner provided only a loan transaction history summary that mentioned a

**[\*20]** payment of county taxes with respect to a property in Orange, California, of $7,196.11 from an escrow account.  Petitioner failed to provide additional evidence with respect to the escrow account or this purported tax payment.

Petitioner's loan transaction history summary failed to establish that he either paid or incurred any portion of the real estate taxes for which he claims he is entitled to a deduction for the 2008 tax year.  See sec. 6001; see, e.g., Anyanwu v. Commissioner, T.C. Memo. 2014-123 (disallowing a real estate tax deduction absent substantiation).  Accordingly, we agree with respondent and hold that petitioner has failed to carry his burden of proof regarding the real estate tax deduction.

IV.  Home Mortgage Interest

Section 163(h)(2)(D) permits an individual taxpayer to deduct any qualified residence interest (otherwise known as home mortgage interest) that is paid or accrued during the taxable year.  Sec. 163(a), (h)(1) and (2).  The Code defines qualified residence interest as interest paid or accrued during a taxable year on either acquisition indebtedness or home equity indebtedness with respect to any qualified residence of the taxpayer.  Sec. 163(h)(3).

Acquisition indebtedness is any indebtedness which (1) is incurred in acquiring, constructing, or substantially improving any qualified residence of the

[*21] taxpayer and (2) is secured by such residence. Sec. 163(h)(3)(B). Acquisition indebtedness includes refinanced indebtedness if the refinanced indebtedness (1) constitutes a refinancing of acquisition indebtedness and (2) is used to finance the construction or substantial improvement of the qualified residence. Id.; Callahan v. Commissioner, T.C. Memo. 2013-131, 2013 WL 2247966, at *11-*12; Griggs v. Commissioner, T.C. Memo. 2013-2, 2013 WL 68714, at *6. Home equity indebtedness is any other indebtedness that is secured by a qualified residence to the extent that the indebtedness does not exceed the fair market value of the residence reduced by the acquisition indebtedness. Sec. 163(h)(3)(C).

A qualified residence is the taxpayer's principal residence and one other residence of the taxpayer which he elects to treat as a qualified residence for the purposes of section 163(h). Sec. 163(h)(4). Married individuals filing separate returns are treated as one taxpayer, and each spouse may take into account only one residence unless both spouses consent in writing that one spouse may take into account both the principal residence and one other residence. Id. A married taxpayer filing a separate return is allowed to deduct mortgage interest payments made on only $500,000 of acquisition indebtedness and $50,000 of home equity indebtedness. Sec. 163(h)(3)(B)(ii), (C)(ii).

[*22] Petitioner was married to Niangnouansy during the years at issue. He did not file a joint return for either 2008 or 2009. Petitioner stipulated that his proper filing status was married filing separately. Petitioner claims that he is entitled to deduct mortgage interest paid on two properties: one in Placentia, California, and the other in Orange, California. Petitioner provided no evidence of any agreement with his spouse that would allow him to take into account two qualified residences for mortgage interest deduction purposes. Petitioner is allowed to take into account mortgage interest paid on up to $500,000 of acquisition indebtedness and up to $50,000 of home equity indebtedness with respect to only one qualified residence.

Petitioner has failed to demonstrate that he is entitled to any deductions of mortgage interest in excess of mortgage interest paid on $50,000 of home equity indebtedness. Additionally, petitioner failed to show that he is entitled to any mortgage interest deductions with respect to acquisition indebtedness for either of the years at issue.

With respect to the Placentia, California, property, petitioner testified that he originally purchased the property in 1994 for $315,000. He did not provide any evidence to show how much, if any, of this amount was financed. Petitioner testified that he mortgaged the Placentia, California, property several times to fund

[*23] his medical practice. He did not offer any evidence to show that he used the proceeds of these mortgages to improve or construct on the property. Instead, petitioner's mortgages were used to fund his business. Petitioner did not show that he incurred any indebtedness to acquire, construct on, or substantially improve the property and thus failed to demonstrate that there was any acquisition indebtedness on the Placentia, California, property. See sec. 163(h)(3)(B).

Petitioner failed to provide any information with respect to the origin or purpose of indebtedness secured by the Orange, California, property. Therefore, petitioner failed to prove that any amount of the indebtedness secured by the Orange, California, property would qualify as acquisition indebtedness under section 163(h).

Home equity indebtedness is any indebtedness other than acquisition indebtedness that is secured by a qualified residence to the extent such indebtedness does not exceed the fair market values of the qualified residence as it is reduced by the acquisition indebtedness. Sec. 163(h)(3)(C). We must treat the mortgages on the two properties as home equity indebtedness to the extent these mortgages do not exceed the fair market values of these properties. Because petitioner's filing status is married filing separately for both years at issue, for each year he may deduct mortgage interest paid on the first $50,000 of home

[*24] equity indebtedness with respect to only one property that qualifies as his qualifying residence. See sec. 163(h)(3)(C)(ii). For both years at issue respondent has already allowed petitioner home mortgage interest deductions on mortgages in excess of the $50,000 limitation.

For 2008 respondent allowed petitioner to take into account $4,048.49 of mortgage interest paid on the Placentia, California, property for a mortgage with a principal yearend balance of $667,017.15. For 2009 respondent allowed petitioner to take into account $45,608.56 of mortgage interest paid on the Placentia, California, property for a mortgage with a principal yearend balance of $659,020.27. Petitioner is not entitled to any additional home mortgage interest deductions. We sustain respondent's disallowance with respect to home mortgage interest deductions for the years at issue.

V.  Schedule C Business Expenses

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses incurred in carrying on a trade or business. Ordinary expenses are those expenses that are frequent, common, usual, or customary in a taxpayer's trade or business. Deputy v. du Pont, 308 U.S. at 495. Necessary expenses are those that are appropriate and helpful to a taxpayer's trade or business. Welch v. Helvering, 290 U.S. at 113.

**[\*25]** A cash method taxpayer may deduct only those business expenses that are paid during the tax year.  Sec. 1.446-1(c)(1)(i), Income Tax Regs.  Petitioner is a cash method taxpayer.  As such, he may deduct for each of the years at issue only business expenses that he paid during those years.  See Olive v. Commissioner, 139 T.C. 19, 32 (2012).

As with all deductions, a taxpayer is required to maintain adequate records to establish his entitlement to business deductions.  Sec. 1.6001-1(a), Income Tax Regs.  If a taxpayer's records are lost or destroyed as a result of circumstances that are beyond his control, he may substantiate his expenses through a reasonable reconstruction of his records.  Boyd v. Commissioner, 122 T.C. 305, 320 (2004); McClellan v. Commissioner, T.C. Memo. 2014-257, 2014 WL 7330983, at \*4.  The burden is on the taxpayer to show that his records were actually lost or destroyed.  McClellan v. Commissioner, 2014 WL 7330983, at \*4.

Petitioner asserts that many of his records were either lost or destroyed in the aftermath of one of several instances of flooding at his business.  The burden is on petitioner to prove that his records were actually lost or destroyed as a result of flooding.  See id.

Petitioner provided evidence to prove that his office sustained water damage or flooding on two occasions.  Petitioner's insurance summary statement shows

[*26] that his business filed claims for incidents of flooding or water damage in September 2007 and in December 2009. The summary statement does not mention any destruction of records. Petitioner and Garcia both testified that petitioner's records were destroyed as a result of flooding. Garcia left petitioner's employ in July 2009. She has no personal knowledge of the flood in December 2009. Garcia's testimony with respect to the 2007 flood was inconsistent. For instance, Garcia first testified that she used various equipment lease agreements to prepare petitioner's 2009 bankruptcy petition. Garcia then testified that most of these lease agreements were lost as a result of the 2007 flood and consequently she had to recreate the information she included in the bankruptcy petition in part by calling the leasing companies. We do not find Garcia's testimony with respect to the destruction of records to be credible.

Petitioner testified that only the equipment lease invoices used for preparing the bankruptcy petition were lost as a result of the floods. Petitioner did not offer any additional testimony with respect to the loss or destruction of documents. Petitioner did not explain what happened to the documents used to file his 2009 tax return, which was filed after the December 2009 flood. Petitioner's testimony was not sufficient to show that his records were lost or destroyed. Similarly, petitioner has generally failed to substantiate his expenses through other evidence.

**[*27]** See Boyd v. Commissioner, 122 T.C. at 320; McClellan v. Commissioner, 2014 WL 7330983, at *4.

    A.  Leases

Section 162(a)(3) allows a deduction for rental or lease payments for property that (1) is used in a trade or business and (2) in which the taxpayer has no title or equity interests. See also sec. 1.162-1, Income Tax Regs. Where a lessee acquires something more than use of the property, his payments build up equity in the property and are not within the definition of rental or other payments under section 162(a)(3). San Diego Transit-Mixed Concrete Co. v. Commissioner, T.C. Memo. 1962-141.

The Code makes a distinction allowing deductions for operating leases and disallowing deductions for capital leases. In a prior case, we defined a capital lease of equipment as an agreement by a lessee to purchase that equipment over time after making a series of lease payments during a set period and thereafter being entitled to acquire the property at a nominal cost at the end of the lease term. Yearout Mech. & Eng'g, Inc. v. Commissioner, T.C. Memo. 2008-217, 2008 WL 4346331, at *12 n.27. In Yearout we defined an operating lease as a lease where the lessee pays to make use of an asset during the lease term but does not have an option to purchase the equipment at the termination of the lease period. Id.

[*28] Section 162(a)(3) allows a taxpayer to deduct as a business expense only the cost of operating leases.

On brief petitioner argues that all of the leases with respect to which there are payments at issue are capital leases. By virtue of this claim, petitioner concedes that he is not entitled to any business expense deductions for any of the lease payments.[12]

Petitioner claims entitlement to depreciation deductions with respect to the leases. Petitioner first asserted this claim at trial where he made an oral motion to amend his pleadings to presumably claim depreciation with respect to all or some of the leased property. The Court granted petitioner's oral motion. However, petitioner failed to present evidence sufficient to substantiate his entitlement to any section 167 depreciation or section 179 accelerated depreciation deductions. Accordingly, petitioner is not entitled to any deductions with respect to the lease payments.

---

[12]Petitioner characterized additional payments made to the leasing companies as miscellaneous expenses for the years at issue. By virtue of his claim, petitioner concedes that he is not entitled to business expense deductions for any of the payments made to leasing companies characterized as miscellaneous expenses.

**[\*29]** B. <u>Payments to Nibiru Categorized as Outside Services, Professional Fees, Contract Labor, and Miscellaneous Expenses</u>

Petitioner claims that he is entitled to additional deductions for outside services, professional fees, contract labor, and miscellaneous expenses for the 2009 tax year for payments made to Nibiru.  Petitioner claims that these payments were made with respect to research purportedly performed by Nibiru.  Nibiru is a wholly owned C corporation of petitioner.

We examine transactions between related parties with special scrutiny. <u>Vanney Assocs., Inc. v. Commissioner</u>, T.C. Memo. 2014-184, at \*7; <u>see also</u> <u>Commissioner v. Culbertson</u>, 337 U.S. 733, 746 (1949) (transactions between family members require careful scrutiny); <u>Chapman v. Commissioner</u>, T.C. Memo. 2014-82, at \*7 (applying special scrutiny to transactions between a husband and wife's respective business entities); <u>Pepsico P.R., Inc. v. Commissioner</u>, T.C. Memo. 2012-269, at \*52 (greater scrutiny is applied to related party transactions); <u>Estate of Rosen v. Commissioner</u>, T.C. Memo. 2006-115, 2006 WL 1517618, at \*14 (requiring heightened scrutiny for intrafamily transactions).  Where a taxpayer is able to show that a genuine transaction exists between himself and a related entity, we allow that taxpayer to deduct properly substantiated ordinary and necessary business expenses under section 162.  See <u>Chapman v. Commissioner</u>,

**[*30]** at *7 (allowing a taxpayer to deduct, as business expenses, payments made to a related business entity for services provided by that entity that were ordinary and necessary for the taxpayer's business).

Petitioner testified that he set up Nibiru in order to carry out a special research project. However, on its 2009 tax return, Nibiru listed its business activities as advertising and public relations. Petitioner failed to show that Nibiru performed any research or provided any services for petitioner. Petitioner's testimony with respect to his purported research project was extremely vague. Petitioner testified that the purported research project concerned a condition called acedia. Petitioner testified that Nibiru helped him gather information relating to the research project but he did not explain what this information entailed, how it was compiled, and why or how such information was either related to or useful for his medical practice. Petitioner testified that Nibiru did not have any other sources of funding, and petitioner failed to offer any other evidence with respect to Nibiru's operations. Garcia, petitioner's office manager, testified that she did not know who Nibiru was.

Petitioner did not list his ownership interest in Nibiru on his 2009 bankruptcy petition. After filing for bankruptcy, petitioner made substantial payments to Nibiru. During his testimony, petitioner initially avoided two

[*31] questions posed to him about his ownership interest in Nibiru. After being asked for a third time, petitioner claimed that he could not remember whether he was a shareholder in Nibiru.

Petitioner's vague testimony and his attempted avoidance of questions posed to him are not sufficient to substantiate that his payments to Nibiru constituted deductible business expenses. Petitioner has not shown that Nibiru actually provided services for his medical practice or that the cost of such services was an ordinary and necessary business expense. See id. Accordingly, we agree with respondent and hold that petitioner has failed to meet his burden of proof regarding claimed additional deductions for outside services, professional fees, contract labor, and miscellaneous expenses to the extent that these claimed deductions relate to payments made to Nibiru.

C. Contract Labor

Petitioner claims additional deductions for contract labor expense for the years at issue. Payments to the following payees are still at issue: Niangnouansy,

[*32] KN,[13] Leo Miguez,[14] Jack Padilla, Spa N Mor, Bank of America, Rick Wong, Garret Hess, Ralph Dudley, and an unknown payee.

Niangnouansy, petitioner's wife, has a 99% partnership interest in KN, a hair salon. We must exercise special scrutiny when examining payments to related payees to determine whether such payments constitute ordinary and necessary business expenses. See Chapman v. Commissioner, at *7.

Petitioner fails to offer sufficient evidence to substantiate that payments to KN were ordinary and necessary business expenses. The only evidence petitioner offered to prove that the payments to KN were ordinary and necessary business expenses was Garcia's testimony. Garcia's testimony with respect to KN was generally vague and of no help. She testified that KN oversaw the billing for petitioner's medical practice. KN's 2009 Form 1065 listed KN's principal product or service as hair products. Neither petitioner nor Garcia explained why petitioner purportedly engaged a hair salon to oversee billing. Garcia testified that she was aware of a written agreement between KN and petitioner for the provision of services. She did not answer when asked about the whereabouts of this

---

[13]Petitioner claims that additional payments made to KN during the 2008 and 2009 tax years qualify as miscellaneous expenses deductions.

[14]Petitioner claims that an additional payment to Leo Miguez is deductible as a miscellaneous expense for the 2008 tax year.

- 33 -

**[*33]** agreement. Petitioner neither offered any such agreement into evidence nor provided an explanation as to his failure to provide the agreement. There is nothing in the record to support petitioner's claim that payments to a hair salon were ordinary and necessary business expenses of his medical practice.

Petitioner did not disclose his marital status on his bankruptcy petition. He made payments of $18,800 to KN in the last two months of 2009 after filing for bankruptcy. On the basis of all these facts, we find that petitioner has not shown that KN actually provided services for his medical practice or that the cost of those services was an ordinary and necessary business expense. See id. We find that petitioner has failed to meet his burden of proving that payments to KN for contract labor and miscellaneous expenses are deductible business expenses.

Petitioner claims a deduction for a payment issued by check and made out to Niangouansy for the 2008 tax year. The check is dated in 2007. Garcia testified that this check was not paid in 2008. Petitioner is a cash method taxpayer and may deduct business expenses only for the year they were paid. See sec. 1.446-1(c)(1)(i), Income Tax Regs. Consequently, we find that because it was not an expense paid during the 2008 tax year, this payment is not deductible for the 2008 tax year.

[*34] Petitioner offered no evidence other than canceled checks and bank statements with respect to payments made to Jack Padilla, Garret Hess, Ralph Dudley, and an unknown payee. Garcia testified that the checks made out to Bank of America were not payments for services but rather were for either equipment leasing or medical supplies. Petitioner conceded that his leases were capital leases; lease payments to Bank of America are therefore not deductible expenses. Petitioner did not provide any additional documentation with respect to the Bank of America checks to prove that they are for a deductible expense. Accordingly, we agree with respondent and hold that petitioner has failed to meet his burden of proving that payments made to Bank of America, Garret Hess, Ralph Dudley, Bank of America, and an unknown payee are deductible business expenses.

Garcia testified that Spa N Mor performed cosmetic services for petitioner's practice. However, petitioner did not present any evidence to show that these services were ordinary and necessary business expenses of his medical practice. Accordingly, we find petitioner has failed to meet his burden of proving that those payments to Spa N Mor are deductible business expenses.

Garcia testified that Rick Wong occasionally provided mobile ultrasound or x-ray imaging services for petitioner's medical practice. Petitioner provided a canceled check issued to Rick Wong for $838.80. Accordingly, petitioner carried

[*35] his burden of proof for an additional contract labor expense deduction of $838.80 for the payment made to Rick Wong in the 2008 tax year.

Garcia testified that Leo Miguez was a construction contractor that petitioner hired to repair his office. Petitioner either rents or leases his medical office. Although the cost of incidental repairs may be deductible as a business expense, a taxpayer lessee may not deduct the cost of permanent improvements that he makes to leased property. Oberman Mfg. Co. v. Commissioner, 47 T.C. 471, 481 (1967); see also sec. 1.162-11(b), Income Tax Regs. Petitioner failed to offer any evidence with respect to the repairs that Leo Miguez performed or to whether these repairs were incidental repairs that would be deductible under section 162. Accordingly, we agree with respondent and hold that petitioner failed to meet his burden of proving that payments made to Leo Miguez, including payments characterized both as contract labor payments and miscellaneous expenses, were improperly disallowed.

D. Bank Service Charges

Petitioner contends that he is entitled to deduct additional bank service charges for two payments made to Chase Card Services for the 2008 tax year. A taxpayer may deduct credit card fees if such fees are an ordinary and necessary expense of his business. See, e.g., Thunstedt v. Commissioner, T.C. Memo. 2013-

[*36] 280, at *22 (allowing a deduction for merchant credit card fees).  However, petitioner provided no evidence to prove that these payments represented payments for deductible credit card fees and not credit card payments.

A taxpayer may deduct an otherwise deductible expense even if that expense is paid with a credit card.  Lawler v. Commissioner, T.C. Memo. 1995-26, 1995 WL 23387 at *5 n.14; see also Rev. Rul. 78-38, 1978-1 C.B. 67 (allowing a charitable contribution deduction for a payment made with a credit card).  However, if a taxpayer uses borrowed funds to pay an otherwise deductible expense, the taxpayer may deduct that expense only when it is paid, not when the borrowed funds are repaid.  Granan v. Commissioner, 55 T.C. 753, 755 (1971).  Pursuant to Granan, if petitioner had used the credit card to make payments for deductible expenses, those expenses would be deductible when they were charged on the card, not when the credit card balances were paid.  See id.  Petitioner failed to provide sufficient evidence for us to conclude that the credit card was used to pay deductible expenses.  Furthermore, petitioner's evidence shows that there was no correlation between the time when his expenses were incurred and charged on the card and the time when he made payments to the credit card company.  Garcia testified that petitioner's practice did not always pay in full all of its monthly credit card balances.  Petitioner has failed to demonstrate both that the payments to

**[*37]** the credit card company were for service fees and that they were to repay the card balance for deductible expenses charged on the card during the same year. Accordingly, we find petitioner has failed to meet his burden of proof and that he is not entitled to additional bank service charge deductions for 2008.

E.  Continuing Education Expenses

Section 162 allows a deduction for all ordinary and necessary expenses paid in carrying on a trade or business.  Section 162 does not explicitly provide for a deduction for continuing education expenses, but such expenses may be deductible under section 162 if they fall within its regulations.  The regulations under section 162 allow a taxpayer to deduct expenditures for education if that education either (1) maintains or improves skills that are required by an individual in his employment, trade, or business or (2) meets express requirements set by the individual's employer or by a law or regulation as a condition of continued employment, status, or compensation.  Sec. 1.162-5(a), Income Tax Regs. Education undertaken by an individual to meet minimum education requirements for qualification in his own or any other trade or business are not deductible.  Id. para. (b)(2) and (3), Income Tax Regs.

Petitioner's continuing education expenses that remain at issue for the 2008 tax year consist of payments he made for flying lessons.  Petitioner testified that he

**[\*38]** was taking flying lessons in a small aircraft in order to join a purportedly charitable movement that provides medical services to remote areas. Because of financial difficulties petitioner did not complete the program.

In deciding whether petitioner's flying lessons are deductible education expenses under section 162, we need to determine whether the education expenses were incurred to maintain or improve his skills for use in his business or whether the education would qualify him to meet the minimum education requirements of some other trade or business. See id. para. (b). We have previously held that if the education for which deductions are at issue qualifies a taxpayer to perform tasks and activities that are significantly different from those that he could perform before receiving the education, then the education qualifies the taxpayer for a new trade or business. Diaz v. Commissioner, 70 T.C. 1067, 1074 (1978), aff'd without published opinion, 607 F.2d 995 (2d Cir. 1979). It is irrelevant whether this education actually leads to qualification in a new trade or business. Id. at 1076.

Petitioner paid educational expenses for flight instruction. Petitioner testified that he intended to use these skills in his business. However, petitioner failed to demonstrate that his flying lessons improved or maintained his skills as a doctor. The skills petitioner learned during the flying lessons were significantly

[*39] different from the skills he already possessed. See id. at 1074. Consequently, the cost of petitioner's flying lessons are not deductible continuing education expenses under section 162. It is irrelevant that these lessons may have helped petitioner reach patients in rural areas. See Katz v. Commissioner, T.C. Memo. 1968-16 (holding that an accountant's flight lessons were not deductible continuing education expenses even where the lessons improved the taxpayer's ability to reach out-of-town clients). Petitioner has not shown that his flying lessons were an ordinary and necessary business expense. Accordingly, we agree with respondent and hold that petitioner failed to carry his burden of proving entitlement to the continuing education expense deductions remaining at issue.

F. Miscellaneous Expenses

Petitioner claims additional deductions for payments made to credit card companies, leasing companies, banks, Home Depot, KN, Nibiru, CHMDI, Leo Miguez, Learsone, and Rockpart Consulting (Rockpart), as well as for payments made to unidentified payees, cash withdrawals, and transfers for the years at issue.

We have already disallowed deductions for payments made to several of these payees as discussed supra. In this section, we will discuss only those deductions for payments remaining at issue for the remaining payees.

**[\*40]** Petitioner provided no evidence other than bank statements and canceled checks with respect to payments made to Learsone and Home Depot. Those canceled checks and bank statements referring to Home Depot list payments to three Home Depot payees: Home Depot, Home Depot Credit, and Home Depot Credit Services. Petitioner failed to explain whether these payees are one and the same entity and whether these payees are direct payees or credit card companies. Petitioner failed to substantiate that payments made to the Home Depot entity or entities and to Learsone were for deductible expenses. Accordingly, we sustain respondent's disallowance of miscellaneous expense deductions with respect to those payments made to the Home Depot and Learsone payees.

Garcia offered vague testimony which provided no assistance with respect to Rockpart. She testified that Rockpart was a consulting service that advised petitioner's practice on how to obtain more money. Aside from Garcia's vague testimony, petitioner provided no other information with respect to the Rockpart payments. Consequently, we find that petitioner failed to substantiate that those payments to Rockpart were deductible business expenses. We sustain respondent's disallowance insofar as it pertains to payments made to Rockpart. See, e.g., Fernandez v. Commissioner, T.C. Memo. 2011-216, 2011 WL 3875061,

**[*41]** at *4 (disallowing a deduction for consulting fees where the taxpayer failed to provide substantiating documentation).

A taxpayer may deduct an expense paid by credit card, but only for the year in which the expense is paid rather than when the credit card balance is paid. See Rev. Rul. 78-38, supra; see also Granan v. Commissioner, 55 T.C. at 755. Petitioner and Garcia both testified that the credit cards were used for various expenses of petitioner's business. Aside from canceled checks and bank statements, petitioner offered no other evidence with respect to these payments. Petitioner did not provide any itemized lists of expenses that he used his credit cards to pay. Garcia testified that the payments made to various credit card companies were for monthly bills. Petitioner's medical practice carried balances on these credit card accounts that could not be paid in full every month. Petitioner has not provided sufficient evidence for us to conclude that the credit cards were used to pay deductible expenses. Furthermore, petitioner's evidence fails to show any correlation between the time when his expenses were incurred and charged onto the credit card companies and the time when he made payments on the credit cards. Petitioner has failed to demonstrate that the payments made to the credit card companies were to repay deductible expenses charged thereto during the same year. Petitioner similarly failed to show that the payments were for

[*42] deductible business expenses. We sustain respondent's disallowance with respect to these items.

Petitioner failed to show that the cash withdrawals, bank transfers, payments to himself and CHDMI, and the missing checks were payments for deductible expenses. Accordingly, petitioner has failed to meet his burden, and we sustain respondent's disallowance with respect to these items.

G. Office Supplies

Petitioner claims that he is entitled to an additional deduction for office supplies for the 2008 tax year for a payment made to Mike's Tint Shop. Petitioner did not offer any evidence with respect to this payment other than a canceled check from CHMDI. The CHMDI check stated in its memo line that the payment was for window tinting. At trial neither petitioner nor Garcia provided any explanation as to the purpose of this expense and how this payment was an ordinary and necessary expense of petitioner's business. See, e.g., Peterson v. Commissioner, T.C. Memo. 2015-23 (holding that office expenses were not deductible where the taxpayer did not explain the business purpose of the expenses); Odujinrin v. Commissioner, T.C. Memo. 2014-213 (allowing a deduction for office expenses where the taxpayer offered as evidence bank statements and canceled checks only to the extent the taxpayer demonstrated a

[*43] business purpose for the expenses). Accordingly, we hold that petitioner has failed to carry his burden of proving entitlement to the additional deduction for office supplies for 2008.

### H. Payroll Expenses

Petitioner claims an additional deduction for payroll expenses for the 2009 tax year. The amount at issue is a check written on the account of SVP to itself. There is no evidence in the record to show that this check is anything other than a transfer between different bank accounts of SVP. Accordingly, petitioner has failed to carry his burden of proving that this payment is a deductible business expense for 2009.

## VI. Accuracy-Related Penalty

Respondent imposed a section 6662(a) accuracy-related penalty against petitioner for both of the years at issue. Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on the portion of any underpayment which is attributable to (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.

Negligence includes "any failure to make a reasonable attempt to comply with the provisions" of the Code or to exercise "ordinary and reasonable care in the preparation of a[n] [income] tax return." Sec. 6662(c); sec. 1.6662-3(b)(1),

**[\*44]** Income Tax Regs. Negligence also includes any failure to maintain adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Disregard includes "any careless, reckless or intentional disregard" of the rules or regulations. Id. subpara. (2). A substantial understatement of income tax exists for an individual if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

The burden of production shifts to the Commissioner with respect to the liability of a taxpayer for any penalty, addition to tax, or additional amount set forth. Sec. 7491(c). To meet this burden, the Commissioner must produce sufficient evidence indicating that is appropriate to impose a penalty on the taxpayer. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). The Commissioner meets his burden of production by demonstrating a substantial understatement of income tax. See, e.g., Bobrow v. Commissioner, T.C. Memo. 2014-21, at \*22-\*23.

The exact amount of petitioner's understatement for each of the years at issue shall be computed as part of the Rule 155 calculation. Even if petitioner's understatement is not substantial within the meaning of section 6662(a), respondent may meet his burden by demonstrating that petitioner negligently claimed

[*45] deductions to which he is not entitled.  Petitioner failed to produce sufficient records to substantiate his claimed income tax deductions, and he claimed income tax deductions to which he was not entitled for each of the years at issue.  See Scully v. Commissioner, T.C. Memo. 2013-229, 2013 WL 5447051, at *9.  Where a taxpayer's records have been lost or destroyed because of circumstances beyond the taxpayer's control, the taxpayer may substantiate his expenses through reasonable reconstruction.  The burden is on the taxpayer to show that the documentation was actually lost or destroyed.  See Adler v. Commissioner, T.C. Memo. 2010-47, aff'd, 443 Fed. Appx. 736 (3d Cir. 2011).  Petitioner did not establish that his records were lost through circumstances beyond his control, and the record shows that he failed to make reasonable efforts to reconstruct his books and records to substantiate his expenses in dispute for the years at issue.  Accordingly, respondent has met his burden of production as to negligence.

Once the Commissioner has met the burden of production, the taxpayer must come forward with persuasive evidence that the imposition of a penalty is inappropriate because, for example, he acted with reasonable cause and in good faith.  Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449.  A determination as to whether a taxpayer acted with reasonable cause and in good faith is made on a case by case basis, taking into account all pertinent facts and

[*46] circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. "Reasonable cause" may also be shown by demonstrating reliance on the advice of a competent tax professional. Higbee v. Commissioner, 116 T.C. at 449; sec. 1.6664-4(b)(1), (c), Income Tax Regs.

In order to show reasonable cause and good-faith reliance on the advice of a tax professional, a taxpayer must demonstrate that: (1) the adviser was a competent professional who had sufficient expertise to justify the taxpayer's reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99.

Petitioner failed to demonstrate that he acted with reasonable cause and in good faith or that he reasonably relied on the advice of his tax preparers. First, petitioner failed to provide evidence of the qualifications of his tax return preparers, Ashley B. Hallsman and Shahid Ali. Petitioner did not call Hallsman or Ali to testify at trial. Second, petitioner failed to prove that he provided the necessary and accurate information or documentation to his tax return preparers.

[*47] Petitioner's returns do not reflect knowledge of all necessary facts on the part of his advisers.  For instance, petitioner's returns both elect a filing status of single despite his being married during the years at issue.  Third, petitioner has failed to demonstrate that he relied in good faith on the advice of either of his tax preparers.  Thus, petitioner failed to demonstrate that he acted with reasonable cause and in good faith.  As a result, petitioner failed to meet the three-factor test as set forth in Neonatology for establishing good-faith reliance on his tax advisers.  See id.  Accordingly, we find that petitioner has not met his burden of proving that it is improper to impose section 6662(a) accuracy-related penalties for all of the years at issue.

Any arguments not discussed in this opinion are irrelevant, moot, or lacking in merit.

To reflect the foregoing and to give effect to the parties' concessions,

Decisions will be entered under

Rule 155.